# Rogers *v.* The State.

## *Indictment for Murder.*

1. *Evidence ; what inadmissible.*—A constable, and several persons whom he had summoned to aid in executing a warrant for the arrest of the defendant, went to defendant's house before day and aroused him, and in answer to a question of the defendant, as to who was present, the constable stated the names of several persons who were not in fact present—among them, one T. After this defendant shot and killed B., one of the *posse*. *Held*, error to permit the State, against the objection of the defendant, to show by T. that the constable had, in fact, summoned him, especially as the constable had not informed defendant of the fact ; and the evidence being illegal, it necessarily worked a reversal of the case, the court being unable to determine that the evidence could not have prejudiced the defendant.

2. *Charge ; what erroneous.*—A charge which postulates as one of the elements of self-defense, *real intent* on the part of the assailed to take life, or do some grievous bodily harm to the assailant, is erroneous. Such intent need not exist in fact; if by some present act or demonstration of the assailed, he induces in the mind of the slayer a reasonable belief that danger to his life or person is imminent, this is enough, though in fact the party slain had not such intent.

3. *Evidence ; what inadmissible.*—Statements or threats by the deceased, a day or two before the killing, and not communicated to the slayer, are not admissible evidence in his favor, where the homicide is proved by direct evidence.

[Rogers v. The State.]

APPEAL from Randolph Circuit Court.

Tried before Hon. H. D. CLAYTON.

The appellant, Henry Rogers, was indicted for the murder of one James P. Brazeale. The material facts may be thus stated : On the 26th day of August, 1876, one T. E. Heard, a justice of the peace, issued two warrants of arrest for the appellant, one of them for an assault with a gun, and the other for an assault with intent to murder. One James Burson was deputized to execute both warrants, and he summoned, as a *posse* to assist in the arrest, John Burson, William Thompson, Alexander Owens, J. R. Owens, and James P. Brazeale. Accompanied by this *posse*, said Burson, on the morning of the 28th of August, 1876, about an hour before day, went to the house of defendant for the purpose of making the arrest ; when they arrived, Burson called out, and the defendant asked him what he wanted, to which he replied that he had warrants for his arrest, and had come to execute them. Defendant replied that he knew what they were there for, "that James P. Brazeale had sworn a damned lie about a dog." Burson then told the defendant that one Alexander Owens had sworn out the warrant, and the defendant then asked Burson who were with him, to which he replied, that Jack Green, Warren Tally, and one Camp, were with him. Burson testified that they were not along with him, but that he told the defendant this to keep him from getting excited ; that he thought if he mentioned the names of the persons actually along he would excite him. This witness further testified that defendant came to the door and remained there until day light ; that he then commenced to read the warrants to defendant, and being unable to do so, he called one William Thompson to assist him, and that the defendant then replied after a portion of them had been read, "You need not read any more, if you had come by yourself or brought gentlemen with you, I would go with you, but you have brought a crowd of my enemies or damned rascals, and I will not go." He also said something about an intent to mob him. Burson further testified that he then told defendant that he had not come as a mob, but had come to execute civil process, and that he (Burson) stepped off to consult Alexander Owens as to his authority to arrest defendant by force, and that while speaking to Alexander Owens, the defendant threw a rock at Owens and shot and killed James P. Brazeale, and also shot at said Owens ; that Brazeale was in a stooping position, with a double-barrelled shot-gun in his hands when he was shot, and that he did not see Brazeale shoot. There was a conflict in the evidence as to the position in which said Brazeale had his gun at the time

he was shot; some of the witnesses testifying that it was in a shooting position, cocked and pointed at defendant, and others swore that the butt was sitting on the ground. One Bowers, a witness for the State, testified that about March, 1876, he saw defendant and asked him why he had not gone to sit up with a sick person in the neighborhood, and that defendant gave as a reason for not going that he did not want to meet his enemies; that James P. Brazeale, Francis Brazeale, William Thompson and James Thompson, Alexander and J. R. Owens and others, had been to his house to run him off, and that if they came again for that purpose he would kill them. The State then offered to prove by Warren Tally, who was introduced as a witness for the State, that James Burson did summon him and one Jack Green to help arrest the defendant, and that for some reason they did not go with them. To the introduction of this evidence the defendant objected, on the ground that it was illegal, irrelevant, and incompetent, and on the further ground that the defendant was not shown to know that Tally and Green had been summoned; but the court overruled the objections, and the defendant excepted. Tally then testified that he and Green had been summoned to assist in the arrest, and to the giving of this testimony the defendant excepted. The defendant introduced evidence tending to show that he killed James P. Brazeale in self-defense, and that said Brazeale was on the opposite side of the fence near by with a double-barrelled shot-gun. There was also evidence that Brazeale and others had gone to the house of defendant, and given him notice to leave, and on the Friday before the killing (which occurred on Monday,) Brazeale and a crowd of others had gone to the house of defendant, and cursed and abused his family. It was also shown that Brazeale had been trying to get persons to sign an agreement to run appellant out of the country, and that the appellant had been informed of this fact before the killing. The defendant offered to prove by one Heard, that on the Sunday before the killing, Brazeale had said to witness, at the house of Warren Tally, "that he believed that the defendant had killed his dog, and that it would take two gallons of his (defendant's) blood to satisfy him for the killing of his dog." It was shown that this statement had not been communicated to appellant before the killing. The court, on motion of the State, ruled out all evidence as to such statements, and the appellant duly excepted.

This was, in substance, all the evidence, and the court charged the jury, among other things, that they might, in in this case, imply and infer malice from the character of the

weapon used, unless the circumstances of the killing or other evidence overcame such inference. To the giving of this charge the defendant excepted. The court then gave the following written charge, at the request of the defendant : "If the jury believe from the evidence, that at the time of the homicide the circumstances were such as to impress the mind of the defendant with the reasonable belief that James Burson and the persons with him were about to do the defendant great bodily harm, and that danger appeared to the defendant to be imminent or threatening, then the jury must find the defendant not guilty." At the request of the State, the court gave the following charge as explanatory of the one last above set out : "To make out self-defense in this case, it is not enough that at the time of the killing the deceased had the apparent means of taking the life of, or doing great bodily harm to the defendant. There must have been an intent on the part of the deceased, coupled with the capacity, or seeming capacity, to take the life of the defendant, or to inflict on him some great bodily harm, and this intent must have been evidenced by some present act or demonstration of the deceased, inducing in the mind of the slayer a reasonable belief that the danger to his life or person was imminent." To the giving of this charge the defendant duly excepted. The jury found the defendant guilty of murder in the second degree, and fixed his punishment at ten years imprisonment in the penitentiary, and judgment was rendered accordingly. From this judgment the defendant appeals, assigning as error the various rulings to which exceptions were reserved.

SMITH & SMITH, for appellant.

HENRY C. TOMPKINS, Attorney-General, with whom was JOHN T. HEFLIN, *contra.*

STONE, J.—On two points, the judgment of conviction in the present case must be reversed. The testimony given by Warren Tally, that the officer, charged with the duty of making the arrest, summoned him and Jack Green to help arrest the defendant, could not have influenced the conduct or motives of the accused—especially, as the fact of such summons is not shown to have been communicated to the prisoner. We cannot know what influence this testimony may have exerted on the minds of the jurors ; and, by an inexorable rule, this must work a reversal of the case.—*Campbell v. The State*, 23 Ala. 54 ; *Ogletree v. The State*, 28 Ala. 53 ; *Brock v. The State*, 25 Ala. 104.

In the explanatory charge, given at the instance of the State, the court also erred. Its language is, "to make out self-defense, it is not sufficient that at the time of the killing the deceased had the apparent means of taking the life of, or doing great bodily harm to the defendant. There must have been an intent on the part of the deceased, coupled with a capacity, or seeming capacity, to take the life of the defendant, or to inflict on him some great bodily harm, and this intent must have been evidenced by some present act or demonstration of the deceased, inducing in the mind of the slayer a reasonable belief that the danger to his life or person was imminent." The error of this charge is, that it postulates as one of the elements of self-defense, a *real intent* on the part of the assailed, to take life, or inflict grievous bodily harm. Its language is, "there must have been an intent on the part of the deceased," &c. This constituent of the defense, like the others, need not necessarily exist in fact. If the intent be evidenced by a present act or demonstration, inducing in the mind of the slayer a reasonable belief that the danger to his life or person was then imminent, this is enough. And the jury must determine, from all the evidence, whether the slayer acted on such well founded belief, and in defense of his person, honestly believed to be in imminent peril; or, whether he was influenced by malevolent feelings. The true rule is laid down in *Harrison v. The State*, 24 Ala. 67; *Holmes v. The State*, 28 Ala. 17; *Dupree v. The State*, 33 Ala. 380.

We are aware that the charge we have been criticising is a substantial copy of the first head note in *Lewis v. The State*, 51 Ala. 1. That head note is scarcely justified by the opinion; but the opinion itself on this point, is a little confused. Taken altogether, it sustains the views above expressed. Appearances, calculated to produce in a reasonable mind, and really producing conviction of impending peril to life or limb, is what is meant by *seeming danger*. Juries must judge of this, and determine whether the blow was the result of such well grounded fear, or whether the appearances were made a pretext or excuse for unnecessary, or excessive violence. To justify the taking of human life, there must be, or reasonably appear to be, imminent, pressing, present danger to life or limb, not brought about by the aggressive act of the person thus threatened, and from which there is no other safe mode of escape. See *Mitchell v. The State*, December term, 1877.

The ruling of the Circuit Court, on the testimony of the witness Heard, excluding statements of Brazeale made to witness on Sunday before the killing, and not shown to have

[Nelson v. Wood.]

been communicated to the accused, was in accordance with the decisions of this court, and is free from error.—*Powell v. The State*, 19 Ala. 577; *Carroll v. The State*, 23 Ala. 38; *Dupree v. The State*, 33 Ala. 380; *Edgar v. The State*, 43 Ala. 45; *Burns v. The State*, 49 Ala. 370.

Reversed and remanded. Let the prisoner remain in custody until discharged by due course of law.