# *Ex parte* Brown.

## *Application for Bail on Habeas Corpus.*

1. *Homicide by intentional use of deadly weapon.*—When life is taken by the intentional use of a deadly weapon, the blow or injury being aimed at the person slain, the act is either excusable homicide, voluntary manslaughter, or murder.

2. *Excusable homicide, or self-defense.*—To make the homicide, in such case, excusable, and bring it within the law of self-defense, there must have been a present, impending danger, real or apparent, to life or limb, or grievous bodily harm, from which there was no other probable means of escape, and the slayer must not have been the aggressor.

3. *Manslaughter, and murder.*—If such homicide was not justifiable in self-defense, then, to reduce it to manslaughter, there must have been an assault, or some other provocation than mere words, no matter how offensive, and the fatal blow must have been struck immediately, without any reflection or deliberation whatever: when there is any resolution, reflection, or deliberation, and the purpose is formed before the fatal blow is struck, the law does not measure the length of time, but pronounces the offense murder.

4. *Bail; when refused.*—On application to this court for bail, in a case of homicide, after its refusal by the primary court or magistrate, it is a safe rule to refuse bail, whenever, on the evidence adduced, a presiding judge would sustain a capital conviction by a jury.

Application by petition by C. S. C. Brown, for the writ of *habeas corpus*, to obtain his discharge on bail from the custody of the sheriff of Montgomery county, charged with the murder of James Adams. After his preliminary trial before a magistrate, the petitioner sued out a *habeas corpus* before the Hon. Thomas M. Arrington, judge of the City Court of Montgomery, by whom bail was refused; and the petitioner having reserved a bill of exceptions to this ruling and decision, he now renews his application to this court (Code, § 4850), on the evidence set out in the bill of exceptions.

Thos. H. Watts, and W. D. Bulger, for the petitioner.

STONE, J.—When life is taken by the intentional use of a deadly weapon, the blow or injury being aimed at the party slain, the act, under our statutes, falls under one of the following classes: *First*, excusable, which means, that the blow is stricken as the only probable means of saving the life of the accused, or of freeing himself from present, impending grievous bodily harm, as the law defines that term.—4 Blacks. Com. 183 *et seq.*; 1 Bish. Cr. Law, §§ 842, 843, 844, 846, 847. To come within this principle, there

OF ALABAMA.

[Ex parte Brown.]

must be a present, impending, real or apparent danger to life or limb, from which there is no other probable means of escape; and even then, the party invoking such defensive excuse, must not have been the aggressor.

The second class is voluntary manslaughter. If parties engage in a combat, or if one be stricken by another, and the party stricken, maddened thereby, and in the immediate heat of blood, influenced solely thereby, slay the assailant, without any formed design to do the deed, this is manslaughter in the first degree under our statute.—Code of 1876, § 4301; *McManus v. The State*, 36 Ala. 285. As said in *Fields v. The State*, 52 Ala. 348, 354: " An affray may have occurred, or a provocation being given, which, if acted on in the heat of the passion it would suddenly produce, the law, in tenderness to human frailty, would receive as mitigating an unlawful killing to manslaughter." It should be noted, however, that to reduce the homicide to manslaughter, a blow must be struck, and the killing must follow immediately as its result. Words, no matter how offensive, if they produce the fatal result, never reduce a homicide to manslaughter. We have a statute, however, which bears on this question, intended to restrain the pernicious practice of carrying deadly weapons concealed about the person.—Code of 1876, § 4298. That statute is framed for cases, where the killing is done by the assailant, or assaulting party. Its purpose was to deny to aggressors, or those who by assault bring on conflicts, all right to shield themselves within the modified criminality of manslaughter, when, after thus bringing on a difficulty, they take life with a deadly weapon which was concealed before the commencement of the fight, the adversary having no deadly weapon drawn.

The third and fourth classes comprehend murder in the first and second degrees under our statute.—Code, § 4295. " Willful, deliberate, malicious, premeditated," are the adjectives which distinguish one species of murder in the first degree. In *Mitchell v. The State*, 60 Ala. 26, we construed these words, and we need not repeat what we there said. We have found no occasion to change or modify our views.—See, also, *Judge v. The State*, 58 Ala. 406; *Fields v. The State*, 52 Ala. 348. The law has declared, and can declare, no length of time, within which the man-slayer must deliberate, or premediate, to raise the offense to the highest grade of homicide, murder in the first degree. If the mind reasons about, or resolves upon the act, before committing it, or if the purpose be formed, no matter for how brief a period, on an event then future, or on a contingency that may happen, to use a deadly weapon, this is delibera-

[Chambers v. Falkner.]

tion, premeditation; and a homicide, committed pursuant thereto, is murder in the first degree. On the other hand, if there be a killing without previous malice, provoked by abusive language, or other offense less than an immediately preceding asssault, and the insulted party, maddened by the insult, immediately and without reflection, without time to reflect, and with no purpose formed or thought of, take life with a deadly weapon, this reduces the crime to murder in the second degree; but it reduces it no lower.

In *Ex parte McAnally,* 58 Ala. 495, this court laid down the rule, in cases like the present, in the following language: " It is a safe rule to refuse bail in all cases, when a judge would sustain a capital conviction, if pronounced by a jury, on the evidence before him." This language was quoted and approved from *Com. v. Keeper of Prison,* 2 Ashm. 227, and has been followed in this court in the later cases of *Ex parte Allen,* 55 Ala. 258; *Ex parte Weaver, Ib.* 250; *Ex parte Nettles,* 58 Ala. 268. We do not feel at liberty to depart from this rule.

If, on the evidence in the transcript before us, a jury were to render a verdict of guilty of murder in the first degree, we, if acting as a primiary court, would not feel at liberty to set aside the finding. We add, however, as we said in Weaver's case: " We do not wish to pre-judge the case, to the defendant's injury. . . They [the jury] try the facts anew, and should give due weight to all facts and circumstances in the case. If, upon all the testimony, there be left a reasonable doubt of the defendant's guilt, he should have the benefit of it," either as a mitigation or excuse, as the faithful finding of the jury may demand or justify, under the rules of law.

*Habeas corpus* denied.