# Fallin *v.* The State.

### *Indictment for Murder.*

1. *Corroborating witness.*—It is not permissible to corroborate a witness, by showing that, on a former occasion, as on a preliminary examination before a committing magistrate, he had made statements in substance the same as his testimony on the trial.

2. *Charge ignoring fault or retreat.*—A charge asked in a case of homicide, which ignores the practicability of retreat by the defendant, or precludes inquiry into the question of fault in bringing on the difficulty, is properly refused.

3. *Charge as to constituents of murder*—A charge asked in a case of homicide, which instructs the jury that they can not find the defendant "guilty of murder, unless they believe from the evidence that, with malice aforethought, he killed the deceased willfully and premeditatedly," is properly refused, since the facts hypothetically stated would only require an acquittal of murder in the first degree.

4. *Charge as to homicide "without excuse or justification."*—A charge given in a case of homicide, instructing the jury that, "when one man kills another without excuse or justification, the law presumes that the killing was done deliberately and maliciously," is erroneous.

FROM the Circuit Court of Elmore.

Tried before the Hon. JOHN MOORE.

The defendant in this case, Jesse T. Fallin, was indicted for the murder of Ross Powell, by striking him with a hoe; was tried on issue joined on the plea of not guilty, convicted of murder in the second degree, and sentenced to the penitentiary for the term of ten years. On the trial he reserved a bill of exceptions, which shows all the points here presented for revision. The homicide was committed, as shown by the evidence adduced on the trial, on Saturday evening,

[Fallin v. The State.]

May 7th, 1887, in a field belonging to the defendant, or then cultivated by him, in which he and his two sons were plowing; and the deceased had gone there to ask or to demand payment of an account, which the defendant insisted had been paid. The parties had been sitting at the root of a tree in the field, but had risen to their feet when angry words between them commenced. But one blow was struck by the defendant, which fractured the skull of the deceased; and he died from the effects of the blow, on the Monday following. The defendant's evidence tended to show that, when the fatal blow was struck, the deceased had thrown his hand behind him, in position to draw a weapon; but no weapon was found on him when other persons arrived. The defendant sent a messenger to the house of the deceased, where he lived with his father and mother, less than a mile from the field in which the killing occurred; and when the mother of the deceased arrived, she found the defendant supporting her son's head in his lap, or on his knees. The defendant stated, in answer to questions as to what he had done, and why he did it, "*He sassed me, and I flew into a passion, and struck him.*" The deceased was "about twenty-one years old, and weighed 115 or 120 lbs., while the defendant was about forty-five years old, and weighed about 150 or 160 lbs.;" and it was proved that, up to the time of the difficulty, they had been on friendly terms. Joe Fallin, a son of the defendant, who was examined as a witness for him, "was asked, if he had not testified before J. R. Brooks, a justice of the peace, on preliminary examination of himself and his brother Charles, when arrested and charged with the murder of said Ross Powell, that his father struck said Ross Powell a left-handed blow; and answered, that he had so testified, but that he had afterwards gone back and looked at the ground, and he now says. that the blow was right-handed. The defendant offered to show by said witness that afterwards, on preliminary examination of the defendant before the probate judge, Lancaster, he testified that, on said examination before the justice of the peace, he swore that it was a left-handed blow, but that he was mistaken in that statement, and that the blow, as he then testified, was right-handed. The State objected to this evidence, and the court sustained the objection; to which ruling the defendant thereupon excepted."

The defendant requested the following charges to the jury, which were in writing, and duly excepted to their refusal:

[Fallin v. The State.]

(1.) "Unless the jury believe from the evidence that the defendant, with malice aforethought, willfully and premeditatedly killed Ross Powell, they can not find him guilty of murder; and this they must believe beyond all reasonable doubt." (2.) "If the jury believe from the evidence that the defendant did not bring on the difficulty, and that, when he struck the fatal blow, he was acting under a reasonable apprehension of great danger to life or limb, and this apprehension may not be actual; then he had the right to strike in self-defense, and the jury must find him not guilty." (3.) "The defendant had the right to order the deceased to leave his premises, and the right to use sufficient force to eject him, in case he refused to go; and if the jury believe from the evidence that the defendant did order the deceased to leave his premises, and that the deceased refused to go, but placed his right hand behind him, as if to draw a weapon, and the defendant then and there struck the fatal blow; and if the jury believe that the defendant had ground for reasonable apprehension of the loss of his life, or of great bodily harm, then they must find him not guilty." (4.) "That the defendant's apprehension need not be real, but, if the circumstances surrounding him are such as to place a reasonable man under a reasonable apprehension of loss of life, or of suffering great bodily harm, and he struck the fatal blow under these circumstances, then they must find for the defendant."

The court gave several charges to the jury at the instance of the State, and among them the following: (3.) "The law does not require any length of time, in order to form a deliberate intent to take life; and if the defendant deliberately killed the deceased, without excuse or justification, he is guilty of murder in the first degree." (4.) "The law presumes, when one man kills another, without excuse or justification, that the killing was done deliberately and maliciously." The defendant duly excepted to each of these charges.

O. KYLE, and W. P. GADDIS, for appellant.

THOS. N. McCLELLAN, Attorney-General, for the State.

SOMERVILLE, J.—1. It was not permissible to corroborate the witness Joe Fallin, by showing that he had made similar statements before the probate judge, or a justice of

[Fallin v. The State.]

the peace, on a former occasion. Testimony of this kind is hearsay, and not admissible.—*Nichols v. Stewart*, 20 Ala. 358; 1 Greenl. Ev. (14th Ed.) § 469; *Com. v. James*, 99 Mass. 438.

2. The second, third and fourth charges, requested by the defendant, were properly refused, on the ground that they all ignored any question as to the practicability of retreat; which duty devolved on defendant, in case of his being able to do so safely, and without being put to disadvantage. The third and fourth charges also preclude any inquiry, as to who was in fault in bringing on the difficulty.

3. The first charge authorized, and even required the jury, to acquit the defendant of murder in the *second* degree, unless the killing was willful and premeditated. This charge was clearly erroneous, and was properly refused. If the killing was unlawful, and with malice aforethought, the jury could properly convict of any degree of homicide, less than murder in the first degree.

4. The judgment must be reversed, however, for the error committed in giving the last charge requested by the State, which asserted that "the law presumes that, when one man kills another, without excuse or justification, the killing was done deliberately and maliciously." As one man may kill another, without excuse or justification, and yet be guilty of manslaughter, and manslaughter involves neither the element of deliberation nor malice, the error of the charge is apparent.

The third charge given at the request of the State need not be discussed, as it relates to murder in the first degree, and will not arise again, as the present conviction, which is for murder in the second degree, upon proper plea filed, must be adjudged to be an acquittal of murder in the first degree upon another trial.

The judgment is reversed, and the cause remanded. The prisoner, in the meanwhile, will be held in custody until discharged by due course of law.