# CASES

IN THE

# SUPREME COURT OF ALABAMA,

### DECEMBER TERM, 1888.

## Cleveland *v.* The State.

*Indictment for Murder.*

1. *Special venire in capital case.*—A special *venire* having been ordered in a capital case, consisting of sixty-four special jurors in addition to the regular jurors for the week ; and on the day appointed for the trial, the case being regularly postponed for two weeks, and another day appointed, it was ordered "that the special *venire* drawn for this cause appear on that day ;" and on the second day so appointed the trial being had, and the judgment-entry reciting that the court "proceeded to impannel the jury from the *venire* drawn for this case ;" *held*, in the absence of exception or objection in the court below, that the record showed no error in these proceedings.

2. *Threats or hostile acts of deceased, or of third person for whom he was mistaken.*—Threats, hostile acts or declarations, at the time of the difficulty, by a third person, for whom the deceased was mistaken by the defendant, of which the defendant had knowledge, are admissible as evidence for him ; but not acts or declarations which he did not know, nor an assault committed on him by that person immediately after the shooting.

3. *Exclusion and subsequent admission of evidence.*—If evidence is erroneously excluded when first offered, but is afterwards admitted, the error is thereby cured.

4. *Character as dangerous and violent man, on question of self-defense.* In proving the character of the deceased, or of the person for whom he was mistaken, as a violent and dangerous man, the court may explain to a witness, "that the question does not refer to a man who fought fairly, and would stand up and would take and give a fair fist-fight, but it meant a man who would take advantage of another, and cut and shoot him, or a man who was in the habit of fighting in a dangerous way."

5. *Self-defense.*—To establish the plea of self-defense in a case of homicide, it must appear that the defendant was free from fault in provoking or bringing on the difficulty ; that he was, really or apparently, exposed to present, impending peril of danger to his life, or of grievous bodily harm, and that there was no other reasonable mode of escape without apparently increasing the imminence of his peril ; and

1

86
93 | 50

86
94 | 89

86
96
96
97 | 1.
28,
86
34

86
98
98 | 1
9.
29

86
100
102
102 | 1
84
143
163

86
105 | 1
17

86
108 | 1
16

86
113
115 | 1
32
40

86
116 | 1
481

86
138 | 1
49

86
143
143 | 1
9
73

[Cleveland v. The State.]

while the *onus* is not on him to negative fault on his own part, he is required to prove that there was no other reasonable mode of escape.

6. *Murder; definition of premeditated and deliberate.*—A charge as to the constituents of murder, in these words: "If the killing was unlawful, then it must be willfully done. . . If it is unlawful and willful, then it must be premeditated: that is, the party must intend, before he strikes the blow, that he will strike the blow at the time he strikes it, and that death will be the result of the blow. It must be deliberate. *That means about the same thing—that he must intend to take the life of the person slain, before he takes that life.* As to the length of time for premeditation and deliberation, that is not definitely defined by the law. This is the test: *If a person had time to think, and did think, and, after having thought, he struck the blow as the result of a determination produced by the operation of the mind, that would be a sufficient deliberation and premeditation,"* gives a correct definition of the words *deliberate* and *premeditated.*

7. *Argumentative charge; charge misplacing burden of proof.*—An argumentative charge, or one which misplaces the burden of proof, is properly refused.

8. *Drunkenness as excuse for homicide.*—Drunkenness may, in a case of homicide, be so excessive as to preclude the existence of malice, and thereby reduce the crime from murder to manslaughter: but this would not require or authorize an acquittal, and a charge asserting that it would is properly refused.

FROM the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The defendant in this case, Ulysses Cleveland, was indicted for the murder of Arthur Glennon, by shooting him with a pistol; was convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for the term of twelve years. No objection was reserved on the trial, so far as the record shows, to the special *venire*, or to the organization of the jury. It appeared on the trial, as the bill of exceptions shows, that the homicide was committed on the night of February 2, 1888, in the city of Mobile, near or between a bar-room and barber-shop, where the defendant, Tom Popham, and several other persons were standing, most of them being under the influence of liquor. The defendant and one Spencer began quarreling, and the defendant drew his pistol; whereupon Popham said, "For God's sake, don't do that," struck or shoved the defendant, and ran into the barber-shop. Glennon, the deceased, came up in the meantime, and peered into the defendant's face, when the latter shot and killed him. Popham came out of the barber-shop immediately afterwards, assaulted the defendant, knocked him down and beat him, until arrested by a policeman. The defense was, that the defendant mistook Glennon for Popham, and shot him under the reasonable belief that his own life was in danger. Popham was ex-

[Cleveland v. The State.]

amined as a witness on the part of the prosecution, and tes-
tified to these facts in substance.   On cross-examination, he
was asked by the defendant's counsel, if he had not tried, on
entering the barber-shop, to get a pistol or a razor, for the
declared purpose of killing the defendant; and if he had not
told the policeman, who arrested him at the time of his as-
sault on the defendant, that he would have killed the de-
fendant if he had not been pulled off.   On objection by the
State, the witness further stating that the defendant could
not have heard what he said in the barber-shop, the court
ruled out that part of his testimony; and also excluded the
evidence as to his assault on the defendant, and his decla-
rations to the policeman; to which rulings the defendant
excepted.

One Harris, a witness for the defendant, was asked,
"whether or not he knew the general reputation of Tom
Popham, as a dangerous, turbulent, and blood-thirsty man;"
and answered, "that he had the general reputation of being
a fussy and fighting man."   The court then stated to the
witness, "that the question did not mean to refer to a man
who would fight fairly, and would stand up and take and
give a fair fist-fight, and if he got whipped would take it;
but that it meant a man who would take advantage of an-
other, and would cut and shoot him, or a man who was in
the habit of fighting in a dangerous way."   The witness
then said, "in reply to this explanation, that he did not
know anything about the dangerousness of Tom Popham."
The court thereupon, on motion by the State, ruled out the
testimony of said witness as to the character of said Pop-
ham; and defendant excepted.

The court charged the jury, *ex mero motu*, as follows:
"In order to constitute murder in the first degree, four ele-
ments are necessary.   The killing must be *unlawful*; that
is, without warrant of law; and of the three or four excep-
tions to this, the only one the jury would have to deal with
here is that of self-defense.   If the killing is unlawful,
then it must be *willfully done*; that is, at the time the party
strikes the blow, he must have the intent in his mind that
death should be the result of the blow.   If it is unlawful
and willful, then it must be *premeditated*; that is, the party
must intend, before he strikes the blow, that he will strike
the blow at the time he strikes it, and that death will be the
result of the blow.   It must be *deliberate*.   *That means
about the same thing—that the party must intend to take*

*the life of the person slain, before he takes that life.* As to the length of time for premeditation and deliberation, that is not definitely defined by the law. The court charges you that this is the test: *If a person had time to think, and did think, and, after having thought, he struck the blow as the result of a determination produced by the operation of the mind, that would be a sufficient deliberation and premeditation.*"

The defendant excepted to the italiazed portions of this charge, and he requested the following charges in writing, duly excepting to their refusal:

(1.) "Even if the jury believe from the evidence that the defendant killed Arthur Glennon, but further believe that, at the time of the fatal shot, he had reasonable cause to believe that it was Tom Popham who was approaching him, and did so believe, and that Popham was about to take his life, or to do him some serious bodily harm; and if the evidence fails to show that the defendant was wrong in bringing on the difficulty, or that the appearance was that he could have retreated without increasing his own apparent danger; then the jury ought to find the defendant not guilty."

(2.) "It is the duty of the jury to determine, first, whether or not the defendant killed Arthur Glennon. If the evidence fail to exclude beyond a reasonable doubt every other hypothesis than that the defendant killed the deceased, then they ought to acquit him. If, however, the jury find from the evidence, beyond a reasonable doubt, that the defendant killed the deceased, but that he did so in what he thought was his own defense, and under circumstances that reasonably induced him to believe that he was about to be attacked in a manner calculated to take his life, or to do him some grievous bodily harm; and fails to show that the defendant was in the wrong in bringing on the difficulty, or that he could have retreated without increasing his apparent danger; they ought still to find the defendant not guilty."

(3.) "Before the jury can find the defendant guilty, they must be satisfied of his guilt beyond all reasonable doubt. A reasonable doubt exists in that state of the case in which, after consideration of all the evidence, the minds of the jurors are left in that condition that they can not say they feel an abiding conviction to a moral certainty of the truth of the charge. It is not sufficient to establish a probability, though a strong one, that the fact charged is more likely to

[Cleveland v. The State.]

be true than the contrary, but the evidence must establish its truth to a moral certainty—a certainty that convinces and directs the understanding, and satisfies the reason and judgment of those who are bound to act conscientiously upon it. Such conviction to a moral certainty is the state of belief which, considered by itself, without reference to the thing believed in, and as a feeling, is a feeling of satisfaction, an easy and pleasant feeling. Doubt is a feeling of dissatisfaction,—an uneasy and unpleasant feeling. When we are convinced to a moral certainty, we are satisfied, and wish for no further proof. When we doubt, we are dissatisfied, and want more information. If a juror feels any uneasiness whatever as to the truth of the fact in saying guilty, and feels any desire for further evidence, he has a reasonable doubt under the law, and must find for acquittal."

(4.) "If the jury believe from the evidence, that the defendant, at the time he fired his pistol, was so drunk that he was incapable of entertaining malice, they can not find him guilty as charged in the indictment."

(5.) "It is the duty of the jury to reconcile all the evidence, if they can, with the theory that the witnesses have spoken truly in every respect; but, if they find that there is a conflict in any portion of the evidence, and if, on consideration of the whole evidence, they entertain a reasonable doubt as to the truth of that evidence, they should give the defendant the benefit of that doubt. If the evidence, about the truth of which they entertain a reasonable doubt, is favorable to the defendant, they should give him the benefit of that doubt, and treat that portion of the evidence as true; while, if such portion of the evidence is adverse to the defendant, they will still give him the benefit of that doubt, and discard such evidence from their consideration.

GREG. L. & H. T. SMITH, for appellant.

THOS. N. MCCLELLAN, Attorney-General, for the State.

STONE, C. J.—In the organization and impanelling of the jury in this case, no objections were made, nor exceptions reserved in the court below. It is objected before us, that when the defendant was put on trial, the *venire* from which the jury was to be chosen, was not the *venire* the law contemplates and requires in such cases.

On Friday, June 22, the case was set for trial on Monday,

July 2; and an order was made for one hundred jurors, including the regular panel, to be summoned to appear before the court on that day, "and that a list of said jurors, and a copy of the indictment, be served on the defendant one entire day before the trial." The court thereupon proceeded to draw from the jury-box of the City Court, in conformity to the statute, "sixty-four names for the special *venire*, in the case of the State of Alabama against Ulysses Cleveland, who is under an indictment charging him with the crime of murder." No objection is pointed out to this part of the proceeding.

When the day for the trial—July 2—arrived, the State not being ready, the hearing of the cause was postponed two weeks, and re-set for trial on Monday, July 16. The court thereupon ordered of record, "that the *special venire* drawn for this case appear on that day." The italics are our own. When the day, second appointed, arrived, no objection was raised to the *venire*, and the court proceeded to impanel a jury, and to try the cause.

It is objected here, that the *venire* put on the defendant, from which to select a jury, was composed of the special *venire* of sixty-four names drawn for the occasion, supplemented with the regular panel for the week first appointed, commencing July 2, whereas it is contended that the regular panel should have been that one which was serving during the week of the trial. We hold it unnecessary to consider this question, for two reasons: First, no objection was raised in the court below. Second, it does not appear that the regular panel of the week, commencing July 2, was a part of the *venire* put on the defendant. The order for the "special *venire*" to appear on the day second appointed, is persuasive to show the contrary. We can not presume error; and parties complaining of the court's rulings, must not leave us in doubt or uncertainty as to what that ruling was.

It is shown in the judgment-entry, that a copy of the indictment and of the *venire* were served on the defendant, one entire day before the trial. We must presume this was the *venire* from which the selection was made.

Defendant was convicted of the murder of Arthur Glennon, the finding being that he was guilty of murder in the second degree. As between the defendant and Glennon, there is no attempt to show either excuse or extenuation. Deceased does not appear to have given any offense, and the only testimony on the subject of their social relations tends to

show they were friendly. The defense relied on was, that the defendant thought he was shooting one Popham; that, so believing, he was acting in self-defense, and, hence, should have been acquitted.

The homicide was committed under an awning, or on a side-walk in the city of Mobile, and at night. All the testimony is that the night was dark. The awning extended across two business houses, separated by a hall-way, with communication from one to the other by the rear of the hall-way. One of the business houses was a barber-shop, with its front folding door half open. There was a light in the shop. The other business house was a drinking saloon, having lights, but the front door was closed. The saloon was west of the barber-shop. The homicide was in front of the barber-shop, but the proof is silent whether the light from the shop shone on the parties. The implication probably is, that it did not. There was a vacant lot adjoining the barber-shop on the east, fenced across the front.

. At the first inception of the difficulty, or of that which it is contended led to it, four or more persons were under the awning—all, or most of them, in front of the barber-shop. Defendant was standing leaning against an awning post. Some foolish words of bravado passed between him and one Spencer, not allowed to be specially proved; and there was some proof that defendant then drew a pistol. The proof was, by several witnesses, that defendant then had a pistol. At this stage, the proof was by Popham himself, that he told defendant not to do that, and struck him, or shoved him, and then ran into the barber-shop. It is not shown that defendant moved from his position, until after the homicide.

There is, as is generally the case, great uncertainty of proof, as to the time elapsing between Popham's retreat, or entrance into the barber-shop, and the firing of the pistol shot. Most of the witnesses who testified on this subject, were more or less intoxicated. They vary in their estimate of the time, from a few seconds to several minutes. Popham's statement was, that it was as much as three or four minutes. ' He was in the saloon when he heard the report of the pistol, but was on the eve of opening its front door, and going out. He immediately went out.

There is equal contrariety of statement as to the direction from which Glennon, the deceased, approached, and appeared on the arena. It is variously testified, that he approached on the side-walk, up the Spring Hill street or road, from the

[Cleveland v. The State.]

west; that he came from Dauphin street, on the east; and one of the witnesses testified, that he approached Cleveland, the defendant, from the direction of the barber-shop. This would be from the north. Now, all this testimony was material, only on the inquiry, whether the defendant had reasonable ground for believing that it was Popham, and not Glennon, who approached him, as presently shown.

The testimony is substantially agreed on the following facts: Immediately preceding, and at the time the fatal shot was fired, Cleveland, the defendant, was standing, or leaning against one of the posts of the awning, not within the range of light from the barber-shop; that Bullock and Soles were standing and conversing a short distance—say six or eight feet—from him; that Glennon, the deceased, approached him with ordinary step, with both hands behind him, and peered or looked closely into his face, and then either stepped back, or threw his head back; and without a word spoken by either, the defendant fired and killed him. There is an absence of testimony that Glennon approached either hurriedly or excitedly; that he changed the position of his hands, or attempted to do so, or made any other hostile demonstration. We think, the testimony shows that defendant had a pistol up to the time of the encounter, and that he got rid of it before his arrest; and that Glennon was without a pistol.

It was attempted to be shown that when Popham, after striking, or shoving defendant, ran into the barber-shop, and thence into the saloon, he tried to obtain a razor and a pistol, and threatened the defendant's life. This testimony, on objection, was all ruled out; there being no testimony that defendant either saw or heard, or could see or hear, what Popham did or said. In fact, the testimony was that, standing where he was, he could neither see nor hear what was said or done. To be admissible, this testimony must have tended to excuse or palliate the homicide afterwards committed. On the theory on which the defense was rested, any hostile act or declaration by Popham, of which defendant had knowledge, was legal evidence. That which he did not and could not know, could not have influenced his conduct, and was rightly ruled out.—*Burns v. State*, 49 Ala. 370; *Rogers v. State*, 62 Ala. 170. For the same reason, Popham's assault on Cleveland, after the homicide, could not have shed any light on the latter's guilt, and all testimony in regard to it was rightly excluded.

[Cleveland v. The State.]

We consider it unnecessary to pronounce on the ruling of the trial court, in first disallowing proof of Popham's character for violence and blood-thirstiness. At a later stage of the trial, when additional testimony had been given in, the court permitted this species of proof to be made. This healed the first error, if any had been committed.

We think the court did not err in the definition of violent and blood-thirsty disposition, which may become a factor in solving the problem of self-defense.—*Pritchett v. State,* 22 Ala. 39; *Fields v. State,* 47 Ala. 603; *Eiland v. State,* 52 Ala. 322; *Bowles v. State,* 58 Ala. 325; *Roberts v. State,* 68 Ala. 156; *DeArman v. State,* 71 Ala. 351; *Lang v. State,* 84 Ala. 1.

Before entering upon the charges in detail, it may not be out of place to summarize certain principles, which we have often reiterated, as indispensable to the plea of self-defense. The manslayer must be free from fault, in bringing on, or provoking the difficulty. The *onus* of disproving this freedom from fault, is not on the defendant. He must be exposed to present, impending peril—that is, he must be presently exposed to imminent danger of losing his life, or of suffering grievous bodily harm, or must reasonably appear to be so, from which he has no other reasonable mode of escape, without apparently increasing the imminence of his peril. The burden of proving this is on him.—*DeArman v. State,* 71 Ala. 351; *Storey v. State, Ib.* 329.

One species of murder in the first degree, as defined by our statute, is a homicide "perpetrated by . . . any . . . kind of willful, deliberate, malicious, and premeditated killing." The trial judge, in his general charge, defined these several qualifying adjectives.—*Mitchell v. State,* 60 Ala. 26. After defining the word *premeditated,* he added: "It must be deliberate. That means about the same thing; that the party must intend to take the life of the person, before he takes that life." There was an exception reserved to this definition. As part of the same paragraph the court added: "If a person had time to think, and did think, and, after having thought, he struck the blow as the result of a determination produced by the operation of the mind, then that would be a sufficient deliberation and premeditation." This, we think, is a very correct definition of the two adjectives, *deliberate* and *premeditated.* One of the definitions of the verb to *premeditate,* is *to deliberate.*— Webster's Dic.; Imperial Dic. We must construe the charge

[Cleveland v. The State.]

as a whole, and not in detached sentences.—*Williams v. State*, 83 Ala. 68.

We are aware that some courts have given a different and more exacting definition of the word "deliberate," as a constituent of statutory murder. See authorities collected in note, 5 Amer. & Eng. Encyc. Law, page 520. Other courts, it will be seen, have agreed with us. Our own rulings were strictly followed by the City Court. They have been so clearly enunciated, and so often repeated, that we have no wish to depart from them. We have not found that they work injustice.—*Ex parte Nettles*, 58 Ala. 268; *Judge v. State*, *Ib.* 406; *Mitchell v. State*, 60 Ala. 26; *Ex parte Brown*, 65 Ala. 446; *Smith v. State*, 68 Ala. 424; *Tidwell v. State*, 70 Ala. 33; *Williams v. State*, 83 Ala. 16; *Lang v. State*, 84 Ala. 1.

Under the rules just declared, the City Court did not err in giving any of the charges asked by the prosecuting officer.

Of the charges asked by the defendant, the first and second were properly refused, because they improperly placed on the State the burden of proving that defendant had some other reasonable mode of escape from the encounter, without increasing his peril, real or apparent. The duty and burden were on the defendant to show the excuse and necessity for taking life; and to make that excuse good, the law required him to prove that he was in present impending peril of losing his life, or of suffering grievous bodily harm, or that he reasonably appeared to be so; and that he had no other reasonable mode of escape, without increasing his peril, or that the circumstances justified the belief that such was the case.—*Ex parte Brown*, 65 Ala. 446.

The third charge asked is an argument, and was rightly refused on that account.—*Lang v. State*, 84 Ala. 1; *City Council v. Townsend*, *Ib.* 478.

The indictment in the present case is in the Code form, and charges the crime of murder. That charge embraces the two degrees of murder, and the two degrees of manslaughter. Now, while drunkenness may be so excessive as to preclude the entertainment of malice, and hence may, in extreme cases, reduce a homicide from murder to manslaughter, it does not call for an acquittal. Charge four was rightly refused.—*Ford v. State*, 71 Ala. 385; *Tidwell v. State*, 70 Ala. 33; *Fallin v. State*, 83 Ala. 5; *Morrison v. State*, 4 Ala. 405.

Charge five was calculated to confuse and mislead, and

[Hall v. The State.]

was rightly refused on that account, if for no other.—*Gunter v. State*, 83 Ala. 96.

Affirmed.