# Poe *v.* The State.

### *Indictment for Murder.*

1. *To what witness may testify.*—On a prosecution for murder, a witness for the defense can not be allowed to testify that the defendant "was afraid" to work in the field alone, or to go out about his premises after dark, on account of threats made against him by the deceased; such testimony being merely the opinion of the witness, based on the conduct or declarations of the defendant himself, or unsupported by any fact at all.

2. *Self-defense; charge as to duty to retreat; explanatory charge.*—In a case of homicide, a charge instructing the jury that, "if the deceased was the assailant, the party assailed must retreat, unless retreat will endanger his safety, and must refrain from taking life, if there *is* any other reasonable mode of escape," states the rule in the ordinary language of the decisions; and if it be objectionable, as requiring the party assailed to act on the actual (and not an apparent) necessity, this qualifying principle should be invoked by an explanatory charge. (The 7th head-note to the case of *Tesney v. The State*, 77 Ala. 33, in stating that the charge therein set out "is erroneous," instead of "too narrow and restricted," is "not justified by the opinion of the court" in that case.)

3. *Same; charge ignoring duty to retreat.*—A charge requested, instructing the jury that, "if they believed the deceased was trying to draw a deadly weapon, or that he acted in such a manner as to convey to the defendant the impression that he was trying to draw a deadly weapon, for the purpose of attacking the defendant," who was armed with a shot-gun, "and thereby put defendant in fear of great bodily harm. he was justified in doing whatever was necessary to preserve his own life;" and a charge asserting that, if the deceased came towards the defendant, using angry and insulting language, "and placed his hand in his pocket in such a manner as to indicate to a reasonable mind that his purpose was to draw and fire, then the defendant was authorized to draw and fire first," each is erroneous, in excluding from the jury all consideration of the inquiry as to any duty to retreat.

4. *Charge as to threats, with overt act, excusing retreat.*—No threats, or overt acts, which do not, actually or apparently, justify a reasonable apprehension of danger to life, or of great bodily harm, will justify the party assailed in killing his adversary, without resorting to retreat; and a charge requested which ignores the duty to retreat, without regard to the character of the threats, is properly refused.

5. *Misleading charge assuming facts to be true.*—A charge requested, which assumes as true certain facts which are controverted, instead of referring to the jury the sufficiency of the evidence relating to them, is properly refused.

From the Circuit Court of Tuskaloosa.

Tried before the Hon. S. H. Sprott.

The defendant in this case, Jasper Poe, was indicted for the murder of Wallace Cooper, by shooting him with a gun;

was convicted of murder in the first degree, and sentenced to the penitentiary for life. The parties were both freedmen, and it seems that they had married sisters, the daughters of Tom and Mary Hailey. The homicide was committed one morning in July, 1888, when the defendant, passing through Hailey's yard, and having his shot-gun on his shoulder, encountered the deceased, and shot him. The wound made by the shot was "about the size of a dollar," and the deceased died within fifteen minutes. Mary Hailey, who seems to have been the only eye-witness of the killing, testified on the part of the State, that the defendant, having his gun thrown across his shoulders, with one hand on each end of it, came up near her as she was sitting in the door of her house, "and asked where they all were;" that she told him they were all gone, and he turned off to leave; "that he had gone about seven steps when he met Cooper, and asked him 'if he was going down yonder to-day'; that Cooper said, 'he did not know'; that defendant then walked on about seven steps, turned and fired, striking Cooper in the back, and killing him." The wife of the deceased also testified, on behalf of the State, that she saw the fatal shot fired, and that the defendant then presented his gun, and threatened to shoot her; but, on cross-examination, she said that she did not see the gun fired, and that the house was between her and the parties at the time, though she saw her husband fall. The defendant, testifying in his own behalf, said that he had been out turkey-hunting that morning, passed Hailey's house on his road home, had some few words with Mary Hailey as he passed her, and then started to go home; and he then proceeded: "I had taken four or five steps, when Cooper came around the corner of the house, meeting me. I tried to pass him, when he pressed towards me, with the remark, 'There is the damned son of a bitch now, and I am going on him.' I had my gun on my shoulder, and was eight or ten feet from him. He put his hand in his pocket, and attempted to draw his pistol. I presented my gun while he was still attempting to get out his pistol, and he had succeeded in getting it out far enough for me to see the but-end, though the barrel was still in his pocket. When I saw what he was going to do, I fired, and he fell. I am certain his side was towards me when I fired, and he flirted around just as I fired."

The prosecution adduced evidence, also, that the defendant and the deceased had had a personal difficulty, in January,

or February, 1888, in which the deceased was shot in the arm; and that the defendant declared, as one witness testified, "in cotton-planting time," that he would kill Cooper. On the other hand, evidence was adduced by the defense, of repeated declarations by the deceased, to different persons, and at different times, that he would kill the defendant if it took him ten years to do it; that these threats had been communicated to the defendant before the killing; that the deceased, at the time of the difficulty between them, in January or February, 1888, had waylaid the defendant, and attempted to shoot him from ambush; and that the deceased was a quarrelsome, turbulent, and dangerous man. Andrew Clines, in whose employment the parties were at the time, thus testified in behalf of the defendant: "Defendant and Cooper were not on good terms, and Tom Hailey and defendant were at outs. I saw Cooper after he was shot. He was shot over the right hip. The load seemed to range straight through, and the wound could have been covered with a dollar. Cooper was a dangerous man. When I got to him he was dead, and I saw no pistol on or near him." During the examination of said Clines as a witness, "defendant offered to prove by him that, previous to the killing, and after defendant had heard of the threats made by Cooper, defendant was afraid to work in his field by himself, and was afraid to go after dark to the spring, or to the horse-lot"; and he excepted to the exclusion of this evidence, on objection by the State.

The court charged the jury, on request of the solicitor in writing, as follows: "If the deceased was the assailant, the party assailed must retreat, unless retreat will endanger his safety, and must refrain from taking life, if there is any other reasonable mode of escape." To this charge the defendant excepted, and he also excepted to the refusal of each of the following charges, which were asked by him in writing: (2.) "If the jury believe from the evidence that the deceased was trying to draw a deadly weapon, or that he acted in such a manner as to convey to the defendant the impression that he was trying to draw a deadly weapon, for the purpose of attacking the defendant, and thereby put him in fear of great bodily harm, the defendant was justified in doing whatever was necessary to preserve his own life." (5.) "If the jury believe the evidence given by the defendant, they will find him not guilty." (6.) "If the jury believe that the defendant did not provoke, or bring on the

[Poe v. The State.)

difficulty, but met the deceased in a peaceable and orderly manner; that the deceased used angry and insulting language to him, and came towards him, and placed his hand in his pocket in such a manner as to indicate to a reasonable mind that his purpose was to draw and fire; then the defendant was authorized to draw and fire first; and the rule would not be varied, if it should afterwards turn out that the deceased was in fact unarmed." (7.) "If the jury believe that the deceased had previously waylaid the defendant to kill him, and had afterwards repeatedly threatened to kill him; and that these threats were communicated to the defendant; and that the deceased was a dangerous man, and the defendant knew the fact; and that they casually met; and that the deceased made threats, and used abusive language, and made any overt act to carry these threats into effect; under these circumstances, the defendant is not required to retreat, or flee, but may kill the deceased, if he honestly believes it is necessary to preserve his life." (8.) "The party once assailed by an enemy who has threatened to kill him, is not bound to run, and thereby escape that assault, leaving the danger still impending, and perhaps increased by the act of running." (9.) "When a man has been threatened with death, by a vindictive, reckless, and determined man, and has once escaped assassination at his hands; and his enemy has lain in wait to kill him; and they meet accidentally; and his enemy reiterates his purpose to kill him, at the same time putting his hand in his pocket, as if to draw a pistol; and he thereupon shoots and kills his enemy, and it afterwards turns out that he had no pistol at the time, that fact does not render him culpable."

J. J. MAYFIELD, and THOS. L. BEATTY, for appellant. (1.) The testimony of Clines was admissible, (1) as tending to prove the character of the defendant, which is always permissible; (2) as tending to show that he apprehended danger at the hands of the deceased, at the time of the killing; and (3) to rebut the idea of malice, arising from the use of a deadly weapon.—*Armor v. State*, 63 Ala. 173; *Kilgore v. State*, 74 Ala. 1; *Fields v. State*, 47 Ala. 603; Burr. Cir. Ev. 509-10, 520-24; 5 Geo. Rep. 85; 2 Halst. 226; 6 Blackf. 299. (2.) The charge given by the court, at the instance of the State, was erroneous, (1) because it ignored the murderous intent and character of the assault; (2) because it required the party

to act on the real (instead of the apparent) necessity; and (3) because it was not warranted by the evidence.—Hor. & Th. Cases of Self-defense, 30, 31, 34, 137; 1 Bish. Crim. Law, § 850; 26 Amer. Rep. 52; 71 Ala. 351, 329; 92 Amer. Dec. 417; 80 *Ib.* 481; 61 *Ib.* 49; 95 Mo. 322; 5 Amer. St. Rep. 882; 17 Ala. 587; 83 Ala. 33; 66 Ala. 548; 67 Ala. 87. (3.) The charges asked and refused correctly stated the law of self-defense. Neither law nor reason requires a man to flee, or even offer to retreat, when he is without fault in bringing on the difficulty, and the assault is felonious in its purpose, fierce in its character, and deadly in its agency. 1 Bish. Crim. Law, §§ 850, 865; 2 Whart. Crim Law, § 1019; Foster's Crown Law, 273; 2 Stark. Ev. 721; Hor. & Th. Cases, 30, 31, 92, 109; 8 Amer. Rep. 474; 77 Ala. 18; 75 Amer. Dec. 52; 80 *Ib.* 398; 2 Crim. L. Magazine, 119; 51 Ala. 1.

W. L. MARTIN, Attorney-General, for the State.

SOMERVILLE, J.—The statement of the witness Clines, that the defendant "was afraid" to work in the field alone, or to go out about his premises after dark, on account of threats made against him by the deceased, for whose homicide he stands indicted, was, at most, but the opinion of the witness, based either on the conduct or declarations of the defendant himself, or else unsupported by fact at all; and it was properly excluded by the court. Such evidence would open the way for easy manufacture of testimony by defendants. The fears of a man, moreover, may be no proper evidence of the danger even apparently confronting him.

"The right of self-defense," as the rule is sometimes stated, "can not be carried to the last resort of taking human life, until the defendant has availed himself of all proper means in his power to decline combat by retreat, provided there is open to him a safe mode of escape—that is, when he can safely and conveniently retreat, without putting himself at a disadvantage by increasing his own peril in the combat."—*Carter v. State*, 82 Ala. 13, and cases there cited; *Brown v. State*, 74 Ala. 478; *Rogers v. State*, 62 Ala. 170.

The charge given by the court, at the request of the solicitor, asserted that "if the deceased was the assailant, the party assailed must retreat, unless retreat will endanger his safety, and must refrain from taking life, if there is any other reasonable mode of escape." This instruction states

the rule in the ordinary language of our decisions, and of the books. The main objection taken to it is, that it requires the party assailed to act only on the *actual*, and not the *apparent* necessity. Such is not the construction generally imputed to charges in this form, which purport only to assert a rule of law in general terms. The defendant, in estimating the peril which surrounds him—in its bearing both on the necessity of taking life, as well as of retreat—may certainly act on reasonable appearances, where this phase of fact enters into the evidence. This qualifying principle should be invoked by an explanatory charge. An instruction given by the court, which ignores it, may be misleading, as too narrow and limited, but it is not erroneous, the giving of a misleading charge not always being ground of reversible error. The case of *Tesney v. State*, 77 Ala. 33, does not go further than this, the seventh head-note not being justified by the opinion of the court.

The second and sixth charges requested by the defendant were erroneous, in excluding from the consideration of the jury all inquiry as to any duty of retreat. The mere fact that the alleged attack by the deceased on the defendant was with a pistol, the defendant himself being armed with a shot-gun, did not warrant the withdrawal of this inquiry from the jury, and its decision as matter of law by the court.—*Storey's case*, 71 Ala. 329, 337.

The seventh charge is predicated upon the idea, that the making of threats and using of abusive language, without regard to the character of such threats, if accompanied by an overt act to carry them into effect, would justify the party assailed in killing his adversary, without resorting to retreat. This is not the law. No threats or overt acts, which do not, actually or apparently, justify a reasonable apprehension of danger to life, or great bodily harm, will avail as an excuse of taking human life. There was no error in refusing this charge.—*Eiland v. State*, 52 Ala. 322; *Storey's case, supra; State v. Benham*, 92 Amer. Dec. 417.

The eighth and ninth charges are misleading, in assuming as true certain facts, without referring the sufficiency of the evidence bearing on them to the jury. The former assumes that in this case a retreat by the defendant, on the uncontroverted facts, would have left the danger confronting him still impending, and perhaps increased. The latter charge assumes as true the testimony of the defendant rendered on the trial, to the effect that the deceased had "put his hand in

[Clarke v. The State.]

his pocket as if to draw a pistol," which was controverted; to say nothing of its failure to refer to the jury the credibility of other testimony tending to support other facts hypothesized in the charge.

This disposes of all the exceptions taken to the rulings of the court. We discover no error in the record, and the judgment must be affirmed.