# CASES

# SUPREME COURT OF ALABAMA.

## NOVEMBER TERM, 1898.

## Winter *v.* The State.

### *Indictment for Murder.*

| | |
|---|---|
| 123 | 1 |
| 129 | 15 |
| 129 | 39 |
| 123 | 1 |
| 133 | 71 |
| 123 | 1 |
| 136 | 29 |
| 123 | 1 |
| 138 | 39 |
| 123 | 1 |
| 143 | 10 |
| 123 | 1 |
| 144 | 124 |

1. *Trial and its incidents; continuance of criminal case.*—An application by a defendant for a continuance in a criminal case, on account of the absence of a witness, is addressed to the sound discretion of the trial court, and when it is shown that such application is denied, but the court put the State to the admission of what the absent witness would testify and also gave the defendant compulsory process to secure the attendance of the witness, and the attachment was ordered in time for the witness to have been brought to the court before the trial was closed, there is shown no abuse of the discretion vested in the court, to authorize a reversal of the judgment of conviction.

2. *Evidence in criminal case; age of deceased relevant.*—On a trial under an indictment for murder, where it is shown that the fatal difficulty between the deceased and the defendant was fought by them with their fists and with sticks, it can not be said that the age of the deceased at the time of such difficulty is immaterial and irrelevant; and the admission of evidence of the age of the deceased in such case is not erroneous.

3. *Same; same; how proven.*—On a trial under an indictment for murder, a witness who testifies that he has known the deceased for more than twenty years, is competent to further testify to the age of the deceased to the best of his judgment.

4. *Indictment for murder; when failure to instruct the jury as to murder in the second degree error without injury.*—Where the defendant is tried under an indictment charging murder in the second degree and is convicted of manslaughter in the first degree, error committed by the court in defining murder in the second degree and in expounding the law in respect thereto is error without injury to the defendant, and will not, under the statute (Code, §4333), work a reversal of the judgment of conviction.

5. *Charge in criminal case; giving of abstract charges not reversible error.*—The fact that an instruction to the jury in a criminal case is abstract, does not require a reversal of the

1

[Winter v. The State.]

judgment, where the defendant requested no additional instruction explanatory of such abstract charge.

6. *Homicide; charge as to manslaughter being presumed from use of deadly weapon.*—On a trial under an indictment for murder, where it is shown that the blow alleged to have resulted in the death of the deceased was struck by the defendant with a stick, which stick is itself introduced in evidence, a charge which instructs the jury that malice may be presumed from the use of a deadly weapon is not abstract and erroneous; nor does the court err in such a case in refusing to charge the jury that the stick used by the defendant and introduced in evidence was not a deadly weapon.

7. *Same; accused guilty where his act accelerates death.*—One may be guilty of homicide by a blow which is, of itself, not mortal, but which accelerates the death of the deceased.

8. *Same; evidence of the character of the deceased.*—On a trial under an indictment for murder, where the defendant is shown to be the aggressor in the fatal difficulty, evidence of the blood-thirsty character of the deceased is immaterial on the question of the defendant's guilt or innocence.

9. *Same; same; charge in reference thereto.*—On a trial under an indictment for murder, a charge which instructs the jury that evidence of the violent or blood-thirsty character of the deceased is immaterial if the defendant was the aggressor in the fatal difficulty, or was not acting in self-defense, asserts a correct proposition and does not preclude the jury, after they have found the defendant guilty, from considering such evidence in measuring his punishment.

10. *Same; charge as to drunkenness.*—On a trial under an indictment for murder, where there was evidence introduced that the defendant was drunk at the time of the fatal difficulty, the fact that the court after a correct instruction to the jury as to the bearing the evidence of the defendant's drunkenness had upon the question of his guilt, then stated to them in his charge that "slight drunkenness or intoxication might tend to aggravate a crime instead of lessen it," does not constitute a ground for a reversal of the judgment of conviction, even though the fatal difficulty was not shown to have been brought about by the fact of the defendant's being drunk; since, if such remark had a tendency to prejudice the defendant in the minds of the jury, the defendant should have asked an explanatory charge.

11. *Same; charge as to reasonable doubt.*—On a trial under an indictment for murder, where the court, in charging on reasonable doubt arising on human testimony, states that reasonable doubt does not mean that guilt must be proven to a mathematical certainty, the further statement by the court "that everything human is subject to some kind of doubt," is not prejudicial to the defendant, and will not work a reversal of the judgment.

APPEAL from the Tuscaloosa Law and Equity Court. Tried before the Hon. J. J. MAYFIELD.

The appellant, Burie Winter, was tried under an indictment charging him with murder in the second de-

gree, was convicted of manslaughter in the first degree, and sentenced to the penitentiary for five years. On the case being called for trial and after the State had announced ready, the defendant stated that he was not ready to go to trial and moved the court for a continuance, on the ground of the absence of one Pink Williamson, who was a witness for the defendant and who resided in the county of Tuscaloosa. It was shown that said Pink Williamson had been duly subpœnæd as a witness, and was absent without the procurement or consent of the defendant. In response to this motion and application for a continuance, the court stated that he would not allow a continuance, but would give the defendant the benefit of a showing as to what the testimony of the witness would be. The defendant objected to being put upon a showing, and made a demand for compulsory process of attachment against the witness and moved the court to postpone the trial until the attachment should be returned. In support of this motion, the defendant made a written statement of the facts to which he expected said witness to testify and it was further shown that the defendant lived in Tuscaloosa county a distance of about eighteen miles from the court house; that he had been duly served with a subpœna and that no certificate from a physician of his sickness had been given, and no excuse for his absence rendered, except the statement of one of the other witnesses in response to a general inquiry by the court that the witness Williamson was not present because he had no way of coming to court. Thereupon the court stated that he would order the attachment to be issued, but that he would not delay the trial to await its return, and "that if the State would admit that the witness if present would testify as set forth in the written showing made by the defendant, the defendant himself could go to trial with the understanding that if the witness was brought in before the conclusion of the testimony that he could be put upon the stand, and that if he was not brought in before the conclusion of the testimony the defendant can use the showing made by the defendant." The State agreed to admit the showing, and thereupon the court ordered the writ of attachment for the witness,

and directed the trial to proceed. To this action of the court the defendant objected on the ground that he was denied by said action of the court the benefit of compulsory process to procure the attendance of his witness as guaranteed by the Constitution, and he duly reserved an exception to such action of the court.

The evidence for the State tended to show that at the time of the difficulty, Millard Gregg, the deceased, and the defendant were under the influence of liquor; that the defendant and his brother, who was about eighteen years old, were quarrelling and that Gregg, the deceased, walked in between them and said to the defendant, "If you want to fight, fight a man;" that thereupon the defendant and said Gregg commenced to fight each other, each of them drawing their knives from their pockets. That the defendant put up his knife, and that as Gregg was advancing upon him with his knife drawn, the defendant struck Gregg in the forehead with his fist; that as he did so, the defendant picked up a stick and struck Gregg over the head. Thereupon the defendant and Gregg separated and each cut a stick, and upon coming together again, the defendant threw his stick at Gregg but missed him; that Gregg struck at the defendant with his stick having his knife open in the other hand, and thereupon the defendant grabbed the stick from Gregg's hands and struck Gregg a blow over the head with said stick. This stick, which the defendant took from Gregg and with which he struck him over the head, was a green oaken stick, which was introduced in evidence and is described in the opinion. It was also shown that at the time the defendant struck Gregg over the head with the stick which he had snatched from him, Gregg was advancing upon him with his knife open, striking at him. This difficulty occurred in August, and the weather was shown to have been very hot. The evidence for the State further tended to show that Gregg died from the effects of the blow on his head which was inflicted by the defendant; one Dr. Perry, a physician who attended the deceased, testifying on the trial that such blow was sufficient to produce death, and that the deceased's death was the result of such blow.

The evidence for the defendant tended to show that Gregg's death was caused by his becoming over-heated while he was under the influence of liquor; one or two of the witnesses testifying that Dr. Perry had said that alcohol and "over-heat" had caused the death of said Gregg.

Upon the cross-examination of one Nathan Wilson as a witness for the defendant, he was asked by the solicitor what was the age of Gregg, the deceased? The defendant objected to this question upon the ground that it called for irrelevant and immaterial evidence. The court overruled the objection, and to this ruling the defendant duly excepted. The witness answered that he did not know the exact age of Gregg, and upon the solicitor asking him to give his best judgment of his age—as to how old he was—the defendant objected to this question upon the ground that the witness had said that he did not know the age of Gregg, and that his opinion or judgment was incompetent evidence. The court overruled this objection, and to this ruling the defendant duly excepted. The witness answered that in his best judgment Gregg was a man of about 45 years of age at the time of his death. He further testified that he had known him for more than twenty years.

The defendant introduced several witnesses who testified that they resided in the same neighborhood with the deceased for a number of years and knew his reputation in the neighborhood in which he lived, and that his general reputation in that neighborhood was that of "a turbulent and dangerous man who would fight with weapons and take an unfair advantage of his adversary."

The court gave to the jury its general charge in writing. The defendant separately excepted to the following portions of the court's general charge, which are numbered to correspond with the numbers on the margin of the transcript: (1.) "Malice is an essential element of murder, but to constitute this malice it is not necessary that there should be an ill-will towards another, or the deceased, but it may be in a condition of the mind which shows the heart to be regardless of duty and fatally bent on mischief towards another person." (2.) "Malice may be presumed when life is taken with a deadly

weapon, unless the proof or the circumstances of the killing rebuts the idea of malice." (3.) "Where a killing is effected by unlawful means, productive of corporal punishment, and the natural consequences of which is to produce death, it may be murder or manslaughter, though there was no specific intention to kill; such as where one in cold blood unlawfully and deliberately beat another so that he dies, it might be murder though he did not intend to kill, if the instrument or manner of beating be apt to kill or the natural consequences of which was to produce death." (4.) "Killing by cruel treatment might be murder, though the murderer might have the authority to correct in a reasonable and proper manner, as a father his child or a master his servant." (5.) "As was said by our Supreme Court: A mere blow with the fist may produce death, but very rarely and would scarcely fix the intent of such consequence. It may, however, be given with such violence and under such circumstances that the necessary intent may be inferred." (6.) "If a man gives another a stroke or wound which it may be is not of itself mortal or fatal, but might with good treatment be cured, yet if death was accelerated by the violence of the defendant he may be guilty." (7.) "If the jury should find from the evidence in this case that the deceased died of the effects of alcoholism, extreme heat or other causes than the alleged violence of the defendant as I have defined it to you, he can not be convicted of murder or manslaughter, but might be convicted of an assault with intent to murder." (8.) "In trials of homicide in all doubtful questions as to who was the aggressor, the violent or blood-thirsty character of the deceased, if such be his character, may be given in evidence. For the reason that an assault or attack by one known to be of a violent character and one who fights with weapons would justify more prompt and decisive measures than if by one of a milder character. But such evidence is confined to defensive measures." (9.) "The evidence of character as to the deceased is immaterial, if the defendant was the aggressor, or was not acting in self-defense." (10.) "The evidence of character as to deceased is immaterial, if the defendant was not acting in self-defense."

Among other things, the court instructed the jury as follows: "Gentlemen, there is some evidence as to the drunkenness of the defendant at the time of the killing. If the defendant at the time of the killing was so intoxicated as not to be capable of forming the design to take life, or of entertaining malice, such drunkenness would then reduce the offense which might otherwise be murder to manslaughter. The mere fact that a party is drunk or intoxicated alone will not reduce the crime of murder to manslaughter; but it must be to the extent of depriving the party of the capacity of malice or intent to take life." After so instructing the jury as to the law of drunkenness, the court then gave the following instruction in its general charge, to the giving of which the defendant separately excepted: "Slight drunkenness or intoxication might tend to aggravate a crime instead of lessen it." The court further instructed the jury in its general charge as follows: "This defendant as well as all other defendants is presumed to be innocent till he is proven to be guilty, and the burden of proof is on the State. Before a defendant can be convicted of any criminal offense, each juror must be convinced of the guilt of the defendant beyond a reasonable doubt. And the burden of proof is always upon the State to so satisfy you of his guilt before you can convict. You must also be convinced to a moral certainty of the guilt of the accused before you can convict and each juror must be so convinced. But this doubt which the law requires to be removed or says should not exist to support a conviction is a reasonable doubt, and is a doubt which arises out of the evidence or the lack of evidence. It is not any doubt that may be imagined or conjured up, but it is a reasonable doubt. While the guilt of the accused must be proven to a moral certainty, which means the same as beyond a reasonable doubt, it does not mean it must be proven to a mathematical certainty." After so instructing them, the court then gave the further instruction to the jury as follows, to the giving of which the defendant separately excepted: "Everything human is subject to some kind of doubt."

The defendant requested the court to give to the jury the following written charges, and separately excepted

to the court's refusal to give each of them as asked. (2.) "The court charges the jury that if they believe the evidence, they can not convict the defendant of murder in the second degree." (10.) "The court charges the jury that the stick offered in evidence in this case is not a deadly weapon." (11.) "The court charges the jury that the stick offered in evidence in this case was not a deadly weapon, when used in the manner in which it was shown to have been used by the defendant in the difficulty between him and the deceased." (12.) "The court charges the jury that if they believe beyond a reasonable doubt that this defendant is guilty of any crime, then they can only consider the facts and circumstances at the time and place when the blow was struck which produced death, in determining the degree of the defendant's guilt." (14.) "The court charges the jury that unless they believe beyond a reasonable doubt that the defendant positively intended to kill the deceased, or that the blow struck the deceased by the defendant was such as that ordinarily and in the usual course of events would have caused death, or that great bodily harm which would have justified the deceased in killing the defendant, then they can not convict the defendant of manslaughter in the first degree.

VANDEGRAAFF & VERNER, for appellant.—The court below erred in refusing to postpone the trial until the attachment asked by the defendant for his witness Pink Williamson should be returned.—Const. Art. I; *Walker v. State*, 117 Ala. 85.

The court erred in overruling the defendant's objections to the evidence elicited by the State on the cross-examination of the witness Nathan Wilson as to the age of the deceased. The testimony was irrelevant and immaterial to the issue and its admission was prejudicial to the accused. It is directly decided in *Martin v. State*, 90 Ala. 610, that a non-expert can not give his opinion on the question of age.

The court erred in charging the jury in this case that malice may be presumed when life is taken with a deadly weapon, unless the proof of the circumstances of the

killing rebuts the idea of malice. Where all the circumstances of the killing are in evidence as in this case the question of malice is one for the jury on all the evidence, and should be left to them without unduly emphasizing by singling out any part of the evidence.—*Eiland v. State,* 52 Ala. 322; *Hornsby v. State,* 94 Ala. 55. Further this instruction assumes that the weapon was a deadly one. This again was a question of fact for the jury, not for the court.—*Thomas v. State,* 103 Ala. 18; *Sylvester v. State,* 71 Ala. 25.

There was error in the court's instruction to the jury that "The evidence of character as to deceased is immaterial, if the defendant was not acting in self-defense." There was no evidence in the case tending to show self-defense or to support that defense. The undisputed evidence showed that the defendant willingly engaged in the difficulty. Yet the evidence as to the dangerous character of the deceased was admitted without objection. In this state of facts the jury were virtually instructed by the court to disregard as immaterial the evidence as to the character of the deceased.—*Fields v. State,* 47 Ala. 607; *Amos v. State,* 96 Ala. 124; *King v. State,* 90 Ala. 612; *Franklin v. State,* 29 Ala. 14; *Jackson v. State,* 90 Ala. 590.

In the part of the general charge relating to drunkenness, the trial court erred in assuming as a fact what was matter of controversy on the trial—that there had been a killing of the deceased by the defendant.—*Green v. State,* 96 Ala. 29. If this be held cured by the charge as a whole, this portion of the charge is still objectionable and erroneous for the reason that it tended directly to the prejudice of the defendant in the minds of the jury in informing them as matter of law that "slight drunkenness might tend to aggravate a crime instead of lessen it."—*McIntyre v. People,* 38 Ill. 514; 1 Bishop's Cr. Law, (7 ed.), 414.

CHAS. G. BROWN, Attorney-General, for the State.

McCLELLAN, C. J.—The trial court's discretion as to granting or refusing continuance was not abused in this case. It not only put the State to an admission of

what the defendant's absent witness would testify, but also gave defendant compulsory process to secure the attendance of the witness; and the attachment was ordered in time for the witness to have been brought under it before the trial closed.—*White v. State*, 86 Ala. 69; *Childress v. State*, 86 Ala. 77; *Davis v. State*, 92 Ala. 20; and see also *State v. Lee*, 22 So. Rep. (La.) 954.

It cannot be said that the age of the deceased at the time of the difficulty between him and defendant in which they fought with their fists and with sticks, was immaterial and irrelevant. And there was no error in allowing the witness Wilson who had known him for more than twenty years to testify that to the best of his judgment he was a man about forty-five years of age. *Weed v. State*, 55 Ala. 13. *Martin v. State*, 90 Ala. 602, "construed in the light of the facts, is not opposed to this" view.

The defendant was tried under an indictment charging murder in the second degree. He was convicted of manslaughter in the first degree. It would seem that on this state of case errors, if any, committed by the trial court in defining murder in the second degree and expounding the law in respect thereto should be held to have involved no injury to the defendant.—*Fallin v. State*, 83 Ala. 5; *Evans v. State*, 109 Ala. 11; Code, §4333. But we do not find error in the parts of the court's charge in this connection to which exceptions were reserved. Of these those numbered 1, 3 and 4 on the margin of the transcript are said to be erroneous only because they are inapplicable to the case, or, in other words, because they are abstract. It has been too often declared by this court to be now open to discussion, that a reversal cannot be based upon the consideration that an instruction given is abstract. If defendant apprehended prejudice, he should have forestalled it by requests for explanatory charges.

What we have just said applies also to that part of the court's charge which declares that malice may be presumed from the use of a deadly weapon; and, moreover, this was certainly not abstract for on the evidence as to the stick used by defendant, the stick itself being in evi-

dence, the jury had a right to find that it was a deadly weapon; and the charge does not take this question from them. In this view, we assume in appellant's favor that the question as to whether the weapon was a deadly one was for the jury, but we do not so decide.—*Sylvester v. State*, 72 Ala. 201. The weapon used was "an oaken stick, which had been cut green and was still flexible and pliant in some measure, about forty inches in length, three and a half inches in circumference at the butt or larger end, and two inches in circumference at the smaller end, or top," and with this weapon the defendant struck the deceased on the side of the head. Whether the character of the weapon as being deadly or not was a question for the court or jury, it is plain that under these facts the court did not err in refusing to charge the jury that this stick was not a deadly weapon.

That one may be guilty of homicide by a blow not of itself mortal but which accelerates death, is a proposition supported by the old case of *Morea v. State*, 2 Ala. 275, and many other authorities.—*Tidwell v. State*, 70 Ala. 33, 45; *Bowles v. State*, 58 Ala. 335, 339, and cases there cited; and if there be cases of death acceleration by a blow in which the party delivering the blow is not responsible for the result this is not one of them.

We find the general charge of the court as to the evidence of the deceased's character for violence, etc., to mean only this, that on the question of guilt vel non such evidence is immaterial where the accused was the aggressor; and this is undoubtedly a sound exposition of the law. If such evidence may be looked to by the jury after they find the defendant guilty in measuring his punishment, (for which there would seem to be no warrant of law, but which we do not decide as the point is not in the case), the charge given by the court did not preclude their doing so.

There was evidence before the jury that the defendant was drunk at the time of the fatal difficulty; and it was, therefore, the court's duty to instruct the jury as to the bearing of this evidence upon the question of his guilt. In the conclusion of a correct statement of the law in this connection the court said: "Slight drunkenness or intoxication might tend to aggravate a crime instead of

lessen it." There are cases in which this would be true, and in making this remark the court was speaking abstractly. That the case at bar was not one of this sort, in that it was not made to appear that defendant's condition in this respect bore any relation in respect of its being brought about to the difficulty, and that the remark therefore may have tended to prejudice him in the minds of the jury affords no ground for a reversal of the judgment. The statement was true, and if injury from it were apprehended by the defendant he could have had its supposed misleading tendency corrected.

It may be that there are things human that are not subject to any kind of doubt; but when the court is speaking of a reasonable doubt arising upon human testimony, and certainly to the exclusion of such doubt on the testimony of witnesses, it is not conceivable how the jury could be misled to the defendant's prejudice by the remark that "everything human is subject to some kind of doubt." The statement being made in the connection it was meant no more than that all human testimony is susceptible of some sort of doubt in the sense that it does not establish facts with mathematical certainty.

The foregoing are the only quetions treated of in the brief of appellant's counsel. There are others reserved on the record, and we have examined them and found them to involve no error; but we deem it unnecessary to discuss them.

Affirmed: