# Mitchell *v.* The State.

*Indictment for Murder.*

1. *Jury law; effect of embodying in the Code provisions of the statute relating to the drawing of juries.*—The act approved February 28, 1887 (Acts of 1886-87, p. 151) "to more effectually secure competent and well qualified jurors in the several counties of this State," is a general and not a local or special law, notwithstanding the exclusion of some counties from its operation; and its several provisions being embodied in the Code of 1896, (Code, §§ 4976 *et seq.*), were re-enacted by the adoption of said Code, and as found therein said provisions are applicable to the counties which were originally excluded from operation of said act.

2. *Organization of jury; not necessary that names of persons who were summoned as talesmen should appear on the list of jurors served on the defendant.*—Where the order for the drawing of a special venire from which the jury to try a capital case is to be impannelled is made a week previous to the one in which the trial is to be had, the fact that the names of some of the jurors who served on the regular juries for the week in which the trial was had, did not appear on the list of jurors served on the defendant or his counsel, constitutes no ground for quashing the special venire, when the evidence shows affirmatively that such persons were not summoned under the *venire facias* issued for the regular juries for such week, but were talesmen, and, therefore, did not belong to such special venire.

3. *Charge of court to jury; presumption of malice through use of deadly weapon.*—In cases of homicide, the use of a deadly weapon raises the presumption of malice unless such presumption is repelled by the evidence which · proves the

[Mitchell v. The State.]

killing; and, therefore, on a trial under an indictment for murder, where the evidence shows that the killing was done with a shot gun, an instruction in the oral charge of the court is free from error which instructs the court that "In a case of homicide arising from the intentional use of a deadly weapon, the law presumes malice from the use of such weapon unless the evidence in the case rebuts such presumption; and if such presumption is not rebutted by the evidence in the case then you are authorized to find that the killing was with malice."

4. *Same; court not required to repeat instructions.*—The court is not required to repeat instructions which have been, in substance, already given to the jury in other written charges; and, therefore, the court can not be put in error for refusing to g've at the request of defendant, charges which were substantially the same as instructions which had been already given at the defendant's request.

5. *Same; when charge as to suspicious circumstances properly refused.*—On a trial under an indictment for murder, where the proof connecting the defendant with the killing is not, in any way, circumstantial but is direct, positive and without dispute, a charge is properly refused which instructs the jury "that mere suspicious circumstances are, in themselves, sufficient to justify a conviction for crime."

6. *Same; reasonable doubt.*—A charge is properly refused at the request of the defendant which instructs the jury "that they must have not only justifying reasons for a conclusion of guilt, not only must they be able to say upon reason that the defendant is guilty, but this conclusion must impress itself upon the minds of the jury with such convincing clearness and force that they are unable to find in the whole evidence any reason for a contrary conclusion."

7. *Same; properly refused when argumentative and giving undue prominence to parts of testimony.*—Charges which are argumentative and give prominence to particular parts of the testimony favorable to the defendant, and which ignore evidence having a tendency to show the guilt of the defendant, are properly refused.

8. *Same; charge as to threats and bad character of deceased.* Neither threats by a deceased nor his bad character would justify his killing by the defendant, if the latter was the aggressor in the difficulty; and, therefore, on a trial under an indictment for murder, charges which instruct the jury that the defendant was justified in taking prompter and more vigorous measures of self-defense when attacked by deceased, if the evidence satisfies the jury that the deceased had made

[Mitchell v. The State.]

threats against the defendant and that he was a dangerous man, without hypothecating that the defendant was without fault in commencing the difficulty, are erroneous and properly refused.

9. *Same; what inference to be drawn from flight.*—On a trial under an indictment for murder, where there is evidence to show that after the homicide the defendant fled to another county, a charge is erroneous and properly refused which instructs the jury that "if from any cause the flight was produced by anything other than a sense of guilt, the flight would be no evidence of guilt; and if upon all the evidence it is reasonably doubtful whether the flight was from conscious guilt, the jury should not regard it as evidence of guilt."

10. *Same; charge relating to argument of counsel properly refused.*—It is not error for the court to refuse to give charges having no other purpose than to respond to or off-set arguments made before the jury by the prosecuting attorney.

11. *Same; as to right of defendant to carry shot gun.*—On a trial under an indictment for murder, where the evidence shows that the deceased was shot by the defendant with a shot gun while the defendant was in the public road, but there is no question made as to the defendant's right to carry a shot gun, a charge which has reference only to the mere right of the defendant to carry a gun along the road, is abstract and properly refused.

12. *Same; charge as to malice.*—On a trial under an indictment for murder, charges which assume that malice can not enter into a homicide which resulted from sudden passion, are erroneous and properly refused.

13. *Same; presumption of malice from use of deadly weapon.*—A charge is erroneous and properly refused which instructs the jury that the "law does not presume the existence of malice from the use of a deadly weapon when all the facts and circumstances of the killing are in evidence; but in cases where they are in evidence, the law makes no presumption as to the existence of malice, but it is then a question of fact for the jury to say whether or not the killing was the result of malice, and the jury can not find such to be a fact until the State has proven it beyond all reasonable doubt."

14. *Same; right to kill in defense of son.*—Before a father can kill in defense of his son, there must exist the same circumstances and conditions as would excuse the son for committing the homicide, and if the son was in fault in commencing the difficulty, such fact precludes any right of the father to

[Mitchell v. The State.]

kill in order to protect or defend the son; and, therefore, on a trial under an indictment for murder, where one of the defenses set up is that the killing was to protect the defendant's son, charges which predicate the defendant's acquittal upon the jury finding that the fatal blow was struck by the defendant in defense or protection of his son, without hypothecating the son's freedom from fault in bringing on the difficulty, are erroneous and properly refused.

15. *Same; self-defense.*—On a trial under an indictment for murder, charges which predicate the defendant's acquittal upon the jury's not being satisfied beyond all reasonable doubt as to whether the killing was done in self-defense, but which fail to set forth the ingredient of self-defense, are erroneous and properly refused.

16. *Same; same.*—On a trial under an indictment for murder, a charge is erroneous and properly refused which instructs the jury that "The court charges the jury that the danger which will excuse one for killing another in self-defense must not be actual. It need only be apparent. Yet if the jury believe from the evidence in this case that the defendant was not the one who provoked the difficulty with the deceased and that the appearances surrounding the defendant at the time of the killing were such as to produce a reasonable belief that his life was in danger and that defendant could not have fled from the scene of the difficulty without increasing his danger, then the law holds the defendant blameless, and the jury should find the defendant not guilty."

17. *Same; reasonable doubt.*—On the trial of a criminal case, a charge asserts a correct proposition and should be given at the request of the defendant, which instructs the jury that "before they can convict the defendant the evidence must be so strong as to convince each juror of his guilt beyond reasonable doubt, and if after considering all the evidence a single juror has a reasonable doubt of the defendant's guilt arising out of any part of the evidence, then they can not convict him," and the refusal to give such charge at the request of the defendant will work a reversal of the judgment of conviction.

APPEAL from the Circuit Court of Marshall.

Tried before the Hon. J. A. BILBRO.

The appellant, D. P. Mitchell, was jointly indicted with Lint and Lon Mitchell for the murder of Dave

Thompson by shooting him with a gun. Upon motion of the defendants a severance was had, and the appellant in the present case was convicted of murder in the second degree and sentenced to the penitentiary for fifteen years.

The defendant filed a plea in abatement to the indictment upon the ground that the grand jury which preferred said indictment was an illegal body in that the jurors composing said grand jury were not drawn in the presence of the clerk, sheriff and probate judge or either of them as required by law, but were drawn by the four county commissioners of Marshall county. A demurrer was sustained to this plea, to which ruling the defendant duly excepted.

Before entering upon the trial of the case, the defendant made a motion to quash the special venire for the trial of the defendant upon the following grounds: "1.  Because Z. R. Dabbs was drawn and summoned as a regular juror for this the third week, and his name is not on the list served on the defendant's counsel. 2.  Because J. M. Allen was drawn and summoned as a regular juror for this the third week, and his name is not on the list served on defendant's counsel. 3. Because the regular jurors for this the third week were not drawn by or in the presence of the clerk, sheriff and provate judge, or either, but were drawn by the county commissioners." Upon this motion there was evidence introduced showing that upon the regular venire drawn by the jury commissioners for the week in which the trial of the defendant was set, the name of "J. N. Allen, farmer, of Beat No. 12," appeared; that the deputy sheriff had a summons for "J. N. Allen" as a grand juror for said week; that he went to the home of "J. M. Allen," who was a farmer and lived in beat No. 12, and was told by the latter's wife that his name was not J. N. Allen, but J. M. Allen. That thereupon the deputy sheriff told his wife that he would not leave a summons for her husband, but she could tell him to come to court if he wanted to, as there was no other Allen in that beat. That the said J. M. Allen appeared on Monday of the third week of the court, which was the week in which the trial of the defendant was set and

was impannelcd as a juror for said week, but that neither the name of "J. N. Allen" or of "J. M. Allen" was on the list of jurors for the week served on the defendant. The return made by the sheriff of the original venire for the jurors drawn by the jury commissioners for the week in which the trial of the defendant was set did not show any service on "J. M. Allen."

The evidence in reference to Z. R. Dabbs being upon the jury showed the following facts: That the sheriff called upon said Z. R. Dabbs and said that he was looking for Jim Dabbs for the purpose of serving upon him a summons to serve as a juror for the third week of the circuit court, which was the week in which the trial of the defendant was set. That the name of the regular venire drawn by the jury commissioners was "J. R. Dabbs, farmer, of beat No. 24." That Z. R. Dabbs was the only person by the name of Dabbs living in beat 24. That the sheriff told said Z. R. Dabbs that he had better come down and see if he was the juror that was summoned. That on Monday of the third week of the court said Z. R. Dabbs appeared and was impannelled on the regular jury for said week, but his name did not appear upon the list served upon the defendant. The name of neither Zachariah R. Dabbs nor Z. R. Dabbs was on the venire for jurors drawn for the third week of the court, and the return on said venire by the sheriff as to said J. R. Dabbs was "not found."

It was admitted that the regular jurors for the third week were not drawn by or in the presence of the circuit clerk, sheriff and probate judge; but was drawn by the county commissioners acting as a jury commission for the county. Upon these facts the court overruled the motion to quash the special venire, and to this action of the court the defendant duly excepted.

The evidence for the State tended to show that as the defendant and his two sons were going along a road in front of the house of Dave Thompson, the deceased, Dave Thompson, came out of a shop across the road from his house, and as he ran across the road and into his yard and got upon the porch of his house, the defendant fired upon him with a shot gun and killed him.

The evidence for the defendant tended to show that. on the morning of the killing he had sent his two sons. to the town of Joppa to borrow a chisel; that in going to Joppa his sons had to pass by the house of the deceased; that the defendant had been told that the deceased held up his son Lint Mitchell the evening before and had made him admit through fear of great bodily harm that he had insulted the deceased's daughter, which was not a fact; that after his sons failed to return with his chisel for a long time, the defendant's. wife remarked to him that she had heard a gun shot. in the direction of the deceased's house, and she was. afraid the deceased had done some harm to the defendant's sons.  That thereupon the defendant took his. gun and went in the direction of Joppa to find his sons;. that he passed by the house of the deceased, and, after finding his sons at Joppa, they started home together; that on their return the latter commenced to run across the road towards his house and called to his daughter to bring his gun quick; that she ran for his gun and. the deceased leaped over his fence, and that as he got upon his porch his daughter was going to him with his gun, and that as he reached for his gun, the defendant. who had ridden up to the house opposite to where the deceased was standing, fired upon and killed him. There was also testimony introduced showing that the deceased was a man of bad, dangerous and turbulent character, and that he had made threats against the defendant, which were communicated to him.  There was also some evidence tending to show that the defendant was informed on the morning of the killing that the deceased had held up his sons on their way to Joppa.  There was also evidence introduced showing that after the killing the defendant went to Marion county, Alabama, for a short time; the defendant testifying that he had gone to Marion county upon the advice of his friends.

The bill of exceptions contains the following recitals in reference to the argument of the solicitor for the State: "The solicitor in his argument to the jury referred to the case of *Perry v. State,* 94 Ala. 25, and.

[Mitchell v. The State.]

argued that there was an important difference between the case at bar and Perry's case in this, that in Perry's case that defendant was in his proper place of business, but that in the present case defendant was not in his place of business, that the evidence tended to show the defendant went to Thompson's house for a difficulty. The solicitor also argued in his argument to the jury that if they desired to indorse the conduct of the defendant on the occasion of the killing they should find him not guilty, but that if they did not wish to indorse it and to hold it up as a public example to be followed they should not acquit him."

The court in its oral charge to the jury, among other things, instructed them as follows: "In a case of homicide arising from the intentional use of a deadly weapon the law presumes malice from the use of such weapon unless the evidence in the case rebuts such presumption; and if such presumption is not rebutted by the evidence in the case then you are authorized to find that the killing was with malice." To this portion of the court's general oral charge the defendants separately excepted.

The court, at the request of the defendant, gave to the jury many written charges. In addition to the charges so given, the defendant also requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The court charges the jury that mere suspicious circumstances are in themselves insufficient to justify a conviction of crime, that before a verdict of conviction is rendered by the jury they should be so well satisfied of his guilt as to have no reasonable doubt from the evidence concerning it." (2.) "The court charges the jury that before they can convict the defendant the evidence must be so strong as to convince each juror of his guilt beyond reasonable doubt, and if after considering all the evidence a single juror has a reasonable doubt of the defendant's guilt arising out of any part of the evidence, then they can not convict him." (4.) "The court charges the jury that they must have not only justifying reasons for a conclusion of guilt, not only must they be able to say

upon reason that the defendant is guilty, but this con-
clusion must press itself upon the minds of the jury
with such convincing clearness and force that they are
unable to find in the whole evidence any reason for a
contrary conclusion." (5.) "The court charges the
jury that they should not capriciously reject the tes-
timony of the defendant simply because he is interested
but unless they have good reason to believe under all
of the circumstances that the defendant has sworn
falsely, then the jury should believe his testimony and
consider it along with all the other testimony in the
case in making up their verdict." (6.) "The court
charges the jury that there is no evidence in the case
that Thompson was not under the influence of liquor
at the time of the killing." (7.) "So, if the evidence
satisfies the jury that Dave Thompson had made threats
against the life of Dab Mitchell and if it further shows
that some of these threats were communicated to him
before the killing, then he would be justified in taking
more prompt and vigorous measures of self-defense if
attacked by him than if attacked by a man who had
made no such threats." (8.) "If the evidence satis-
fies the jury that Dave Thompson was a quarrelsome,
dangerous man, then defendant would be justified in
looking at his conduct in the light of his bad character
and would be justified in acting more promptly and
vigorously if attacked by him than if he were attacked
by a man of good character." (9.) "The court charges
the jury that flight, though a circumstance to be
weighed by the jury as evidence against the defendant,
is of weak and inconclusive character, that it may not
be evidence of guilt at all if it appears that there was
any other motive for the flight than that of a sense of
guilt. Flight may proceed from an unwillingness to
stand a public prosecution, from being in a strange
land without relatives or friends, or from fear of the
result; from an inability to explain certain false ap-
pearances, to avoid public excitement, or from other
reasonable motives, and if from any cause it be that the
flight was produced by anything other than a sense of
guilt, the flight would be no evidence if it is reason-
ably doubtful whether the flight was from conscious

guilt, the jury should not regard it as evidence of guilt." (10.) "The court charges the jury that if Lint Mitchell had insulted Thompson's daughter, this would not warrant or authorize Thompson to assault or slay the said Lint Mitchell, and the right of defendant to protect his son, Lint Mitchell, under such circumstances would be just as great as if Lint had insulted Thompson's daughter." (11.) "The court charges the jury that the law does not say that the jury by a verdict of not guilty thereby indorses the conduct of the defendant on the occasion of the difficulty; but that they would only thereby say that the State has not proven beyond all reasonable doubt and to a moral certainty that the defendant is guilty of any offense charged in the indictment." (12.) "The court charges the jury that in considering the actions and conduct of the defendant at the time of the killing and on the same day after the killing, the jury must consider it in the light of the circumstances surrounding the defendant at that time, and if he was surrounded by circumstances of excitement, and if under such circumstances he employed intemperate or harsh language, then the meaning of said language is to be read in the light of these and all other circumstances of the case." (13.) "The court charges the jury that defendant had the right to carry his gun along the public road whether he feared or apprehended an attack from Thompson or not, and if he carried the gun only for the purpose of protecting his son or sons from unlawful violence at the hands of Thompson, then this was a lawful carrying of a gun." (15.) "The court charges the jury that although Mitchell was not, at the time of the killing, in his place of business, yet he was in the public road where he had as much right to be for all lawful purpose as he had to be in his place of business." (16.) "The court charges the jury that if Thompson threatened to kill defendant and his sons if they did not stop passing by his house along the public road, and if defendant did know of such threat or threats, still he had the right to send his son, Lon, to Joppa for a chisel, and if after the son was gone he was informed of facts which aroused his fears that

Thompson had done his son violence, he had a right to arm himself and go and see about his son, and if, when starting, he had the purpose to kill Thompson if he had to in order to save his son from death or great bodily harm, then this was a lawful purpose, and for such purpose he had a right to pass along the public road in front of Thompson's house." (17.) "The court charges the jury that the law does not presume the existence of malice from the use of a deadly weapon when all the facts and circumstances of the killing are in evidence, but in cases where they are in evidence, the law makes no presumptions as to the existence of malice, but it is then a question of fact for the jury to say whether or not the killing was the result of malice, and the jury can not find such to be the fact until the State has proven it beyond all reasonable doubt." (18.) "The court charges the jury that if the killing in this case was the result of passion suddenly aroused upon reasonable provocation and not of a premeditated purpose to kill the deceased, the defendant would not be guilty of murder in either degree, and in order to constitute this reasonable provocation it is not necessary that the deceased should actually have used violence upon defendant's person, but acts indicating an intention to use a deadly weapon and to fire within shooting distance would be a sufficient provocation." (20.) "If the killing was willful and intentional, yet if it was without malice, then the defendant could be guilty of no higher grade of offense than manslaughter, and if the killing was the result of sudden passion aroused in the breast of the defendant by an attempt by Thompson to assault defendant or either of his sons with a gun, then the killing, if not justifiable on the grounds of self-defense, would be only manslaughter." (21.) "The court charges the jury that if defendant was shortly before the difficulty informed that Thompson had held up his sons on the public road with a gun, and if the receipt of this information stirred up his passion and anger, and if on returning Thompson ran toward the house and called for his gun, and if this further aroused defendant's anger, and if under this anger and not from malice he killed Thompson, he would be guilty of man-

slaughter only." (22.) "If Mitchell's feeling toward
Thompson were unkind or unfriendly, yet if he killed
Thompson intentionally in self-defense, he would be
not guilty, notwithstanding his unfriendly or ill feeling
toward Thompson." (23.) "The court charges the
jury that even if the defendant's feelings were not kind
or unfriendly toward Thompson, yet if he killed
Thompson willingly and intentionally, but if he killed
him in self-defense, he would not be guilty notwithstand-
ing his unfriendly or ill feeling toward Thompson."
(24.) "The court charges the jury that it is not the law
that a man can not fight willingly and still be guiltless.
The act of killing may be willingly and intentionally
done, and yet if it is done in self-defense, the accused
would be innocent." (25.) "The court charges the jury
that if the defendant killed Thompson intentionally and
from a previously formed design, yet if he killed him
in self-defense, then the defendant would still be not
guilty, notwithstanding the previously formed design."
(26.) "The court charges the jury that it is not the
law that there can be no self-defense if Mitchell
bore malice or ill will toward Thompson, but the law
is that the malice must bear the same relation to
the killing as cause to effect, and if Mitchell's feel-
ings toward Thompson were unkind and friendly, yet
the killing might still be in self-defense, and if the
killing was in self-defense, then the defendant is not
guilty, notwithstanding the ill will toward Thompson."
(27.) "If the jury have a reasonable doubt as to
whether he acted in self-defense then the jury should
give him the benefit of such doubt and acquit him."
(28.) "The court charges the jury that if they have
a reasonable doubt that after considering all the evi-
dence as to whether the killing was done in self-defense
then the jury must find the defendant not guilty."
(29.) "The court charges the jury that the danger
which will excuse one for killing another in self-de-
fense must not be actual. It need only be apparent.
Yet if the jury believe from the evidence in this case
that the defendant was not the one who provoked the
difficulty with the deceased and that the appearances

surrounding the defendant at the time of the killing were such as to produce a reasonable belief that his life was in danger and that the defendant could not have fled from the scene of the difficulty without increasing his danger, then the law holds the defendant blameless, and the jury should find the defendant not guilty." (30.) "While the slayer must use all reasonable means to avoid the fatal act, yet where it is reasonably apparent that he is about to be assaulted with a deadly weapon by the deceased, and if he is not in a position to avoid it reasonably, the law does not require him to wait until his assailant gains a position equal to his own and is upon equal terms with him in all respects, and if the State has not shown beyond all reasonable doubt that defendant was at fault in bringing on the difficulty, but under such circumstances he may lawfully slay his adversary so soon as it appears reasonably from the acts of the assailant that a mortal combat is unavoidable." (31.) "The court charges the jury that if the defendant's wife came to him where he was at work in the shop and told him that she had heard a gun shot down in the direction of Thompson's house and that she was uneasy about her two sons, and if she asked him to go and see about them, and if defendant knew that there was ill feeling on the part of Thompson toward one of these sons, then it was the right of defendant to arm himself and to go and see about his sons, and he did not lose the right because he said to his wife that he would 'go down there and kill the damned scoundrel if he had to and be done with it,' and if thereupon defendant went on down by Thompson and spoke to Thompson in a friendly way and then passed on toward Joppa, and if after meeting his sons he went on to Joppa and they toward Thompson's, and if shortly thereafter defendant's son Lint came back to Joppa and told him that Thompson had held him and Lon up with a gun, then defendant had the right to return to Thompson's for the purpose of looking after and securing his son's safety, and if he did return for this purpose it was a lawful purpose and if as he drew near to Thompson's house the latter ran

across the road and called for his gun and acted in
such a way as to create in the mind of defendant the
reasonable and honest belief that defendant was in
the act of making a deadly assault with a gun either
upon himself or upon one or the other of his sons,
and if the defendant did entertain an honest belief to
this effect and at the time of discovering this apparent
or actual purpose of deceased the defendant or the one
of his sons apparently about to be so assaulted was
so close to Thompson that he could not have fled with-
out apparently or actually increasing his danger or
placing himself at a great disadvantage, then the de-
fendant was not required to retreat, but the law says
that he might anticipate Thompson's fire first, and if the
killing occurred in these circumstances the jury should
find the defendant not guilty." (33.) "The court
charges the jury that the defendant was not required by
the law to quit the highway in front of Thompson's
house or cease passing along it at that point merely be-
cause if such be the fact, he feared or apprehended that
Thompson would attack him if he undertook to pass
there, or even if Thompson had threatened that he
would kill him if he undertook to pass there, but un-
der such circumstances the defendant had the right to
arm himself for defense against any such apprehended
or threatened attack whenever he had occasion to pass
along the public road in front of Thompson's house for
any peaceable and lawful purpose, and if thereupon
without any other fault upon the defendant's part
Thompson acted in such a way as to create in the de-
fendant's mind the reasonable and honest belief that
deceased was in the act of making a deadly assault upon
one of his sons with a gun, and if defendant honestly en-
tertained this belief, and if at the time of discovering
this actual or apparent purpose of the deceased the de-
fendant or the one of his sons apparently about to be
assaulted was so close to Thompson that he could not
under the circumstances have fled without increasing
his or his son's actual or reasonably apparent danger,
or placing himself at a greater disadvantage, then the
defendant was not required to retreat; but the law says

[Mitchell v. The State.]

that under such circumstances the defendant might anticipate and fire first and slay his adversary, and if these be the facts of this case your verdict must be not guilty."

J. E. BROWN and O. D. STREET, for appellant.—The court erred in sustaining the demurrers to the plea in abatement and in refusing to quash the venire.—Endlich on Interpretation of Statutes, § 502; Code of 1886, §§ 4299-4315 and note, p. 131; 23 Am. & Eng. Ency. of Law (1st ed.), pp. 144, 145, 148, notes; *Holt v. Mayor,* 111 Ala. 369; *Anniston v. Southern R.,* 112 Ala. 557.

The court erred in its oral charge in the statements of the law as to the presumption of malice arising from the use of a deadly weapon.—*Eiland v. State,* 52 Ala. 332; *Martin v. State,* 47 Ala. 564.

The court erred in refusing to give the several charges requested by the defendant.—*Pritchett v. State,* 22 Ala. 39; *DeArman v. State,* 71 Ala. 351.

CHARLES G. BROWN, Attorney-General, for the State.

SHARPE, J.—It was not a valid ground of objection to the grand jury which found the indictment or to the special *venire* from which the petit jury was selected that they were not drawn by or in the presence of the sheriff, clerk and probate judge, according to the act of February 28, 1887. That act was altered by the adoption of the Code of 1896 so as to conform to the provisions of the jury laws as contained therein.—§ 4976, *et seq.; Baker v. State,* 122 Ala. 1; *Thompson v. State, Ib.* 12; *Childress v. State, Ib.* 21.

The day set for the trial of this case was a week subsequent to the week in which the special jurors were drawn. In such case the statute provides that the special jurors drawn "together with the jurors drawn and summoned" for the week of the trial shall constitute the *venire* from which the jury to try the case shall be selected.—Code, § 5005. Without deciding whether Allen and Dabbs were drawn, it is enough to say the evidence shows affirmatively that they were not summoned under the *venire facias* issued for the regular juries but

were talesmen and did not belong to the special *venire* in question.—*Floyd v. State,* 55 Ala. 61; *Thomas v. State,* 94 Ala. 74. The fact that the names of those jurors did not appear on the list of jurors served on defendant or his counsel was not ground for quashing the special *venire.*

The proposition stated by the court in its oral charge with reference to the presumption of malice arising from the use of a deadly weapon was correct as applied to the evidence in the case.—*Gibson v. State,* 89 Ala. 121; *Miller v. State,* 107 Ala. 40.

At defendant's request many written charges were given which collectively bear on most if not all the important principles proper for the consideration of the jury. Those charges are in the transcript and are found to embody substantially the propositions asserted in refused charges numbers 12, 30 and 34; hence criticism of those charges may be omitted upon the settled principle that the court is not bound to repeat instructions which have been in substance given in other written instructions.—*Ratliff v. State,* 122 Ala. 104; *Liner v. State,* 124 Ala. 1; *Taylor v. State,* 121 Ala. 39, and cases there cited.

The proposition of charge 1 that "mere suspicious circumstances are in themselves insufficient to justify a conviction for crime" was not applicable to this case, inasmuch as the proof connecting the defendant with the killing was not circumstantial but was direct, positive and without dispute.—*Welch v. State,* 124 Ala. 41.

The mere fact that in the whole evidence some reason might have been found for doubting defendant's guilt without regard to whether such reason was a substantial one or to what extent it was outweighed by other reasons so found, did not as a matter of law prevent a verdict of conviction as was in substance asserted by charge 4.

Charges 5, 6, 13, 21 and 32, are objectionable as being argumentative and giving prominence to parts of the testimony favorable to the defendant to the obscuration of evidence having an opposite tendency. *Frost v. State,* 124 Ala.85.

Neither threats by the deceased nor his character, however bad, would have justified the defendant in killing him if defendant was the aggressor.—*Winter v. State,* 123 Ala. 1; *DeArman v. State,* 71 Ala. 351. Therefore in view of the evidence tending to show he was the aggressor, charges 7 and 8 were each bad if for no other reason because they do not hypothesize that the defendant was without fault in commencing the difficulty.

Number 9 was argumentative, and besides it was abstract in that there was no evidence indicating that defendant's flight was on account of his being in a strange land without relatives or friends. Moreover, the jury was not bound to reject the fact of flight as evidence of guilt though they may have considered it doubtful whether it was inspired by conscious guilt.—*Kelso v. State,* 47 Ala. 573.

Charge 10 was abstract in proposing to turn inquiry upon whether defendant's son had insulted the daughter of deceased. The only legal evidence bearing on that subject was in disproof of such insults.

The court was not bound to give charges having no other purpose or bearing than to meet arguments of opposing counsel as appears to have been the case with charges 11 and 15.—*Hawes v. State,* 88 Ala. 37; *Brown v. State,* 121 Ala. 9.

Defendant was not injured by the refusal of charge 14. So much of it as involved the defendant's right to carry a gun for defensive purposes was included in given charge 33; and the remainder had reference only to his mere abstract right to carry a gun along the road asserting a mere truism about a matter not in controversy, and not pertinent to the issue.—*Gafford v. State,* 122 Ala. 54.

One fault which characterizes numbers 18 and 20 is that they each assume that malice cannot enter into a homicide resulting from sudden passion, whereas malice may arise on the instant and may co-exist and cooperate with passion suddenly aroused. 18 would also have invaded the province of the jury in specifying what acts of provocation would reduce the offense below murder.

The law presumes malice from an intentional use of a deadly weapon in the commission of homicide unless the existence of malice is rebutted by the evidence which proves the killing.—*Hornsby v. State,* 94 Ala. 55; *Miller v. State, supra.* Charge 17 misstates that rule.

Defendant's right to kill in defense of his son depended on the same conditions as would have been necessary to excuse the son if he had killed the deceased. If the son was at fault in commencing the difficulty that fact precluded any right of the defendant to kill in order to extricate or protect him. Charges 16 and 33 are bad in not hypothesizing the son's faultlessness in that respect, without which the defendant could not lawfully have killed or purposed to kill the deceased.

Charge 19 was calculated to mislead the jury to believe the killing if done in hot blood could not have been malicious.

Charges 22 to 28, inclusive, are bad in predicating a right to acquittal on self-defense without hypothesizing the existence of conditions which must have existed in order to give the right to act in self-defense, viz., defendant's freedom from fault in bringing on the difficulty, his inability to retreat without increasing his own danger and a real or apparent necessity to kill, in order to save himself from great bodily harm.—*Roden v. State,* 97 Ala. 54; *Miller v. State, supra; McLeroy v. State,* 120 Ala. 274; *Golson v. State,* 124 Ala.8.

No. 29 fails to recognize that defendant may have been at fault so as to preclude him from setting up self-defense by conduct short of provoking the encounter, as by encouraging and engaging in the difficulty willingly.—*Harris v. State,* 123 Ala. 69; *Howell v. State,* 79 Ala. 284.

No. 31 taken as a whole is so confused and obscure of meaning as to be capable of misleading the jury.

A single error appears in the many rulings assigned as error and that consists in the refusal to give charge 2. That charge combines two principles each of which as stated in separate charges has been sanctioned by decisions of this court; first, to warrant a conviction the

evidence must be such as to convince each juror of guilt beyond a reasonable doubt (see *Carter v. State,* 103 Ala. 93; *Grimes v. State,* 105 Ala. 86; *Hale v. State,* 122 Ala. 85); second, such doubt arising from any part of the evidence upon consideration of the whole, precludes a rightful conviction.—*McLeroy v. State,* 120 Ala. 274; *Turner v. State,* 124 Ala. 60. Charges somewhat like but different from those considered in the cases cited in support of the first proposition were condemned in *Cunningham v. State,* 117 Ala. 59, and *Lewis v. State,* 121 Ala. 1; but respecting that feature the charge now in question cannot be distinguished from those passed on in the cases of *Carter, Grimes* and *Hale, supra.* It must be held that the refusal of charge 2 requires a reversal of the judgment.  .

Reversed and remanded.