# Mitchell v. The State.

## *Indictment for Murder.*

1. *Evidence as to character; competency in rebuttal.*—On a trial under an indictment for murder, where the defendant has introduced evidence tending to show that the deceased was a man of violent and bloodthirsty character, it is competent for the State, in rebuttal, to show by a witness that the deceased was "a good, fair, average man."

2. *Indictment for murder; when refusal to give charge requested need not be considered on appeal.*—Where, on a trial under an indictment for murder, the defendant was convicted of manslaughter, the refusal of the trial court to give a charge requested by him which had reference alone to murder need not be considered on appeal; the conviction of manslaughter being an acquittal of murder.

3. *Argumentative and misleading charges* are properly refused.

4. *Homicide; charge as to inference to be drawn from flight.*—On a trial under an indictment for murder, where there is evidence tending to show that after the homicide the defendant fled to another county, a charge is erroneous and properly refused which instructs the jury that "Flight of a defendant, although a circumstance to be considered by the jury in connection with all the other evidence, is evidence

5 c

[Mitchell v. The State.]

of a weak and inconclusive character. It may not be evi-
dence of guilt at all if it be shown that there was any
other reason for the flight than that of a sense of guilt.
Flight may proceed from an unwillingness to stand a public
prosecution or from fear of the result, from an inability
to explain false appearances, or from the advice of friends
to avoid public excitement, and if it proceeded from any one
or more of these reasons, then flight is not evidence of guilt
at all."

5. *Same; charge as to interest of witness.*—On a trial under an
indictment for murder, where the children of the deceased
testified as witnesses, a charge is properly refused which in-
structs the jury that they must weigh the testimony of the
children of the deceased "in the light of the fact that they
are the children of the deceased, and of the material interest
they have in the case."

6. *Same; charge as to conspiracy.*—On a trial for murder, where
there is evidence tending to show a conspiracy between the
defendant and his two sons who were jointly indicted with
him, charges are properly refused which instruct the jury
that "there is no evidence that the killing in this case was
in pursuance of any conspiracy."

7. *Same; charge of court to jury.*—On a trial under an indictment
for murder, where there is evidence tending to show that the
defendant was the aggressor, charges are erroneous and
properly refused which instruct the jury that the defendant
"is warranted in acting more promptly in his own defense
when assailed by a person he knows had made threats
at taking his life, than when assailed by one who had made
no such threats"; and "when assailed by a man of known
violent character, than when assailed by a person of peace-
able and law-abiding character."

8. *Same; charge as to self-defense.*—On a trial under an indict-
ment for murder, a charge requested by the defendant which
does not hypothesize the belief of the defendant that he
was in imminent peril at the time of firing the fatal shot,
and which does not fully and clearly state the doctrine of
imminency of peril and escape therefrom, is properly refused.

9. *Same; same.*—On a trial under an indictment for murder, where
there is evidence tending to show that the defendant was the
aggressor, a charge is erroneous and properly refused which
assumes that the defendant was free from fault in bringing
on the difficulty.

10. *Same; same.*—In such a case, a charge is erroneous and prop-
erly refused which seeks to impose no duty of retreat on de-
fendant.

APPEAL from the Circuit Court of Marshall.

Tried before the Hon. JAMES A. BILBRO.

The appellant in this case, D. P. Mitchell, was indicted jointly with his two sons, for the murder of one Dave Thompson by shooting him with a gun, was tried separately and convicted of manslaughter in the first degree and sentenced to the penitentiary for five years.

On the trial the evidence for the State tended to show that as the defendant, in company with his two sons, was passing by the house of the deceased, Dave Thompson, said Thompson ran across the road towards his house, and as he got near his porch, the defendant fired upon him and killed him; that the defendant was near the gate opening into Thompson's yard at the time the fatal shot was fired. There was some evidence on the part of the State tending to show that there was a conspiracy between the defendant and his two sons for the killing of said Thompson; that Dave Thompson had a few days prior to his killing snapped a gun at one of the sons of the defendant.

The evidence for the defendant tended to show that a short time before the killing the two sons of the defendant, who were jointly indicted with him, started towards their homes by Thompson's house; that when they got to Thompson's house they saw his son carrying a gun to him, and that thereupon one of the sons turned back and went to where the defendant was; that thereupon the defendant went with him to Thompson's house, carrying his gun; that as Thompson saw the defendant coming, he ran across the road to his house, calling to his daughter to bring him his gun quickly; that the defendant saw Thompson's daughter carrying the gun to him, and that when Thompson was within ten or fifteen steps from his daughter the defendant fired upon him. There was evidence introduced on the part of the defendant showing that Thompson had made threats against the defendant and his sons and had stated that he was going to kill him. The daughter and his two sons testified as witnesses for the State. There was evidence introduced as to the character of the deceased. This is sufficiently shown in the opinion. There was evidence

tending to show that after the homicide the defendant fled to Marion county.

Upon the introduction of all the evidence the defendant requested the court to give several written charges, and separately excepted to the court's refusal to give each of said charges. Charges 1 to 7, inclusive, relate to murder, and it is, therefore, unnecessary to set them out in detail. The other charges, to the refusal to give each of which the defendant separately excepted, were the following: (8.) "The court charges the jury that flight of a defendant although a circumstance to be considered by the jury in connection with all the other evidence, is evidence of a weak and inconclusive character. It may not be evidence of guilt at all if it be shown that there was any other reason for the flight than that of a sense of guilt. Flight may proceed from an unwillingness to stand a public prosecution or from fear of the result, from an inability to explain false appearances, or from the advice of friends to avoid public excitement, and if it proceeded from any one or more of these reasons, then flight is not evidence of guilt at all." (10.) "The court charges the jury that in considering the testimony of Maggie, Francis and David Thompson, they must weigh it in the light of the fact that they are the children of the deceased, and of the material interest they feel in the case." (12.) "The court charges the jury that there is no evidence that the killing in this case was in pursuance of any conspiracy." (13.) "The court charges the jury that there is no evidence in this case of any conspiracy between D. P. Mitchell, Lon Mitchell and Lint Mitchell to take the life of the deceased." (14.) "The court charges the jury that a defendant is warranted in acting more promptly in his own defense when assailed by a person who he knows has made threats of taking his life than when assailed by one who has made no such threats." (14½.) "The court charges the jury that the law is that a defendant is warranted in acting more promptly in his own defense when assailed by a man of known violent character than when assailed by a person of peaceable and law abiding character." (15.) "The court charges the jury

that they have a right to look to the character of the deceased man, and evidence tending to show that the deceased was a man of violent character is proper for their consideration in connection with all the evidence in determining who was the aggressor in the difficulty, and in determining what impression the conduct of the deceased at the time of the killing made upon the mind of the defendant." (16.) "The court charges the jury that if they believe from all the evidence that there were appearances of danger surrounding defendant at the time of the difficulty, then in determining whether such appearances were sufficient to produce in the mind of the defendant a reasonable belief that his life was in danger, the jury should determine the sufficiency of such appearances of danger from the standpoint then occupied by the defendant as he was then surrounded, and if after thus considering the evidence the jury have a reasonable doubt as to whether such appearances were sufficient to produce such a reasonable belief in the mind of the defendant, and if the defendant did not provoke the difficulty and there was no other reasonable means of escape, and if under these circumstances defendant killed the deceased, then this was self-defense and the jury should acquit the defendant." (17.) "While the slayer who is free from fault in bringing on the difficulty must use all possible means of retreat to avoid the fatal act, yet where it is reasonably apparent that he is about to be assailed with a deadly weapon by the deceased in such a manner as apparently to subject him to danger of losing his life, if he is not in a position to avoid it reasonably, the law does not require him to wait until his adversary gains a position equal to his own, and is upon equal terms with him in all respects, but under such circumstances he may lawfully slay his adversary so soon as it appears reasonably from his adversary's acts that a mortal combat is unavoidable." (20.) "The court charges the jury that when defendant started back from Joppa to Thompson's he entertained the purpose of engaging in a difficulty with Thompson, if such should be necessary to protect his son, Lon Mitchell, against an unprovoked and felonious assault by Thompson, if such

should be made, this would not make the defendant the aggressor in the difficulty." (21.) "The court charges the jury that an intention when the defendant started back from Joppa towards Thompson's to kill Thompson, if it should become necessary to do so in order to protect his son, Lon Mitchell, against a felonious and unprovoked assault at the hands of Thompson, would not make the defendant at fault in bringing on the difficulty."

J. E. Brown and Street & Isbell, for appellant, cited *Martin v. State*, 90 Ala. 602; *Fallin v. State*, 83 Ala. 5; *Evans v. State*, 109 Ala. 11; *Winter v. State*, 123 Ala. 10; *Eiland v. State*, 52 Ala. 322; *Kelso v. State*, 47 Ala. 573; *Sylvester v. State*, 71 Ala. 17; *Karr v. State*, 100 Ala. 4; *Smith v. State*, 88 Ala. 73; *DeArman v. State*, 71 Ala. 351; *Roberts v. State*, 68 Ala. 156.

Chas. G. Brown, Attorney-General, for the State, cited *Cobb v. State*, 115 Ala. 18; *Mitchell v. State*, 129 Ala. 23; *Winter v. State*, 123 Ala. 9; *Vaughn v. State*, 130 Ala. 88; *Gilmore v. State*, 126 Ala. 22; *Hall v. State*, 130 Ala. 45; *Frost v. State*, 124 Ala. 25; *Evans v. State*, 109 Ala. 9; *Wilkins v. State*, 98 Ala. 6; *Ford v. State*, 129 Ala. 16.

DOWDELL, J.—On the trial, the defendant introduced evidence tending to show that deceased was a man of violent, bloodthirsty character. The State in rebuttal, introduced a witness, who was asked if he knew the general character of the deceased, who answered, that "he was a good, fair average man." To the question and answer, the defendant objected, because illegal and irrelevant, which objection was overruled. The objection raised in argument is, that the evidence offered is not in rebuttal. It is true the original evidence was as to violent, bloodthirsty character. These traits have some bearing on general character, and it is clear the State had the right to rebut such evidence by showing the deceased's reputation for peace and quiet. It would seem that proof that "he was a good, fair aver-

age man," would have some tendency in that direction, and to that end, was not wholly illegal and irrelevant. Moreover, it was open to the defendant, to require the witness to explain what he meant by the expression used, if it was supposed it did not tend to show character for peace and quiet.—*Hussey v. State,* 87 Ala. 122; *Eiland v. State,* 52 Ala. 323.

The defendant was convicted of manslaughter in the first degree, on indictment charging him with murder. Charges from 1 to 7, inclusive, requested by defendant and refused, had reference to murder, and do not, therefore, require consideration.—*Evans v. State,* 109 Ala. 11; *Winter v. State,* 123 Ala. 1; *Fallon v. State,* 83 Ala. 5.

Charge 8 requested by the defendant was argumentative and calculated to mislead. There was no error in its refusal. The same charge in substance was condemned on the former appeal.—*Mitchell v. State,* 129 Ala. 23.

Charge 9 is not insisted on, for the reason as counsel state, it "finds substantial duplication in given charge No. 36."

Charge 10. That the children of deceased were competent witnesses for the State, and that they testified under whatever influence their relation to him inspired, was in nowise disputed. That the jury had the legal right to believe or disbelieve them, as they would any other witnesses in the case, nobody denied. The only effect of the instruction was to draw the attention of the jury to the relationship of the witnesses to the deceased, as a matter calculated to throw discredit on their evidence. The charge was a mere argument, which possibly might have been given, but its refusal was equally without error.—*Horn v. State,* 102 Ala. 155.

Charges 12 and 13, as there was some evidence tending to show a conspiracy between the defendant and his sons, were properly refused.

Charges 14, 14½ and 15, in view of the evidence tending to show that defendant was the aggressor, were each bad, if for no other reason, because they ignore any reference to fault on defendant's part in commencing the difficulty. Similar charges were, for the same rea-

son, condemned on the former appeal.—*Mitchell v. State*, 129 Ala. 23. It may be added, that charge 15 was given substantially in charges 38, 40 and 45.

Charge 16 is faulty. It does not hypothesize the belief of defendant, that he was in imminent peril, nor does it fully and clearly state the doctrine of imminency of peril, and of escape therefrom.—*Evans v. State*, 109 Ala. 12; *Wilkins v. State*, 98 Ala. 1; *Howard v. State*, 100 Ala. 94; *Jackson v. State*, 78 Ala. 47.

Charge 17, as applicable to this case, assumes that the "slayer is [was] free from fault in bringing on the difficulty," and this is sufficient to condemn it. Moreover, it inculcates the repudiated doctrine, that if a defendant is in a position of advantage over his adversary, who is about to assault him, he may hold his position, even to the point of slaying his adversary, and make no effort to retreat, although his danger is not increased thereby.—1 Mayfield Dig., 804, §§ 55, 57.

Charge 18 was rightly refused. It hypothesizes two different moments of time, on which the instructions are based; 1st, when Thompson was crossing the road and running towards his house fleeing from Mitchell to a place of safety; and the 2d, the moment when defendant shot Thompson. As to the first period of time, the instruction is asked, that if Mitchell believed the facts hypothesized, "he had a right to act in the light of this reasonable belief,"—[to do what is not stated, and up to this time, no duty of retreat is put upon him by the charge, but it continues after a comma],—"and if Mitchell was without fault in bringing on the difficulty, *and if at the moment he shot* [having stood his ground meantime, while Thompson was running for his gun], the appearances were such as to create in his mind, a reasonable belief that he was in danger, etc. * * * and if there was not reasonably apparent to defendant, circumstances as he then was [at the moment he shot], a means whereby he could escape without increasing his danger, then the defendant would not be guilty," etc. The charge is thus open to the construction, that it seeks to impose no duty of retreat on defendant, from the danger appearing at the first period of time men-

tioned, when Thompson was fleeing towards his house, and not to impose such duty on him, till afterwards, at the moment when he shot, whereas, he was under this duty, at all times from the inception of the difficulty. If not positively erroneous, it is confusing and calculated to mislead.

Charge 19 is not insisted on in argument, and without reference to that fact, was properly refused. It is confused and argumentative.

Those numbered 20 and 21 were also properly refused. If given, their only tendency would have been to mislead. *Non constat,* the facts hypothesized, the jury, under all the facts of the case, may have believed that defendant was the aggressor and precipitated the difficulty.

Affirmed.